United States Court of Appeals

FOR THE EIGHTH CIRCUIT

———————

Nos. 96-2460/2461

———————

Richard John Freitas, Sr.,                    *
                                              *
    Appellee/Cross-Appellant,             *
                                              *    Appeals from the United States
       v.     *              District Court for the
                                              *    Northern District of Iowa.
John Ault,            *
                                              *
    Appellant/Cross-Appellee,             *
                                              *
      and                                 *
                                              *
Irene G. Howard,                              *
                                              *
    Defendant/Cross-Appellee.             *


———————

Submitted:  February 12, 1997

Filed:  April 4, 1997

———————

Before RICHARD S. ARNOLD, Chief Judge, and HANSEN and MORRIS SHEPPARD
    ARNOLD, Circuit Judges.

———————

MORRIS SHEPPARD ARNOLD, Circuit Judge.

    John Ault, one of the defendants in a suit brought under 42 U.S.C. § 1983, appeals the trial court's ruling that a prisoner's due process rights were violated when he was transferred to a higher-security facility without a hearing.  He also appeals the amount of the damage award.  The prisoner, Richard John Freitas, Sr., cross-appeals the amount of damages awarded to him, one of the trial court's factual findings, and the trial court's

holding that he was not sexually harassed by Irene G. Howard, a prison official. We affirm in part and reverse in part.

                                    I.

After Mr. Freitas, an inmate at Iowa's minimum-security North Central Correctional Facility ("NCCF"), was assigned to a job as a painter under the supervision of Ms. Howard, a romantic relationship developed between the two that lasted several months. Mr. Freitas and Ms. Howard would meet in secluded areas of NCCF, where they would kiss, hug, and talk. At Ms. Howard's request, Mr. Freitas would write her "hot sexy" letters approximately every other day, and Ms. Howard occasionally dressed in tight skirts and high heels for Mr. Freitas's benefit.

Although the two discussed living together upon Mr. Freitas's release, Ms. Howard was apparently less serious about the relationship than Mr. Freitas, for she saw and slept with other men. After Mr. Freitas learned from Ms. Howard that a male companion would be staying with her over the weekend, he decided to inform Mr. Ault, the warden of NCCF, about the relationship. Mr. Freitas wrote Mr. Ault a letter informing him of the affair between the two in which he used the word "relationship" to characterize their interactions and stated that "I've been as much at fault" as Ms. Howard and that "[t]his isn't all my fault."

Mr. Ault read the letter, called Mr. Freitas into his office, and asked him to describe in writing his interactions with Ms. Howard. Mr. Freitas complied, producing a three-page statement in which he described the relationship and stated that he was "ending things" because Ms. Howard had lied to him. To avoid possible disruptions at NCCF, Mr. Ault immediately transferred Mr. Freitas to the Iowa Men's Reformatory in Anamosa ("Anamosa"),

2

a medium-security institution in which Mr. Freitas had been housed before coming to NCCF.

Contrary to state and prison policies, Mr. Freitas received no written notice of his transfer to Anamosa and no oral or written notice that he had violated any NCCF rules, and he neither met with the NCCF classification committee (the group that ordinarily considers transfers and assignments) nor received a hearing. At the time of Mr. Freitas's transfer, it was anticipated that a disciplinary report would follow, although none did. Upon his arrival at Anamosa, therefore, Mr. Freitas was placed in administrative segregation. When no disciplinary report followed, he was placed in "on-call" status for thirty days. Mr. Freitas slowly regained Level V status, which he had at NCCF, but even then, he enjoyed fewer privileges than at NCCF.

Unhappy with all of these events, Mr. Freitas brought an action under 42 U.S.C. § 1983 against Mr. Ault and Ms. Howard, asserting that his due process rights had been violated when he was transferred to Anamosa without a hearing and that Ms. Howard had sexually harassed him. After a bench trial, the district court found for Mr. Freitas on the due process claim and for Ms. Howard on the sexual harassment claim. (Mr. Freitas was eventually paroled to his sister in Maine but was later convicted of a different, unrelated offense in Iowa and is now back in the Iowa Department of Corrections system.)

II.

On appeal, Mr. Ault argues that the trial court misapplied Sandin v. Connor, 115 S. Ct. 2293 (1995), in holding that he violated Mr. Freitas's due process rights by involuntarily transferring him to another prison without a hearing. We agree. In Sandin, the Supreme Court redefined the analysis for determining

3

whether a state has created a liberty interest on the part of prisoners that would implicate the Due Process Clause of the Fourteenth Amendment. The Court believed that its prior cases improperly emphasized the presence of mandatory language in state statutes and regulations giving rise to the claimed liberty interests. Id. at 2299. The Court held that the focus should properly be on whether the deprivation alleged by the prisoner imposed "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 2300. In Mr. Freitas's case, the trial court erroneously relied on mandatory language in certain state and prison policies to determine that Mr. Freitas had a liberty interest in not being transferred without a hearing, and then held that the resulting deprivation of a hearing was a denial of due process because Mr. Freitas's transfer to a higher-security institution imposed an "atypical and significant hardship," id., on him.

The appropriate inquiry is whether the conditions of Mr. Freitas's confinement after his transfer constituted a hardship that could reasonably be characterized as "atypical and significant," id. See, e.g., Wycoff v. Nichols, 94 F.3d 1187, 1189-90 (8th Cir. 1996). It is undisputed that Mr. Freitas's transfer resulted in several changes in the conditions of his confinement. Upon his arrival at Anamosa, Mr. Freitas was placed in administrative segregation ("lock-up") for ten days while NCCF officials contemplated whether to take disciplinary action against him. While in "lock-up," Mr. Freitas was allowed out of his cell for approximately one hour a day. After no disciplinary action followed, Mr. Freitas was released into the general prison population and placed in "on-call" status for thirty days. During that time, Mr. Freitas was allowed out of his cell a few hours each day and could have a limited number of visitors, but he could neither work nor enjoy phone privileges.

4

Mr. Freitas did not regain Level V status for approximately three months. Even then, however, Mr. Freitas enjoyed fewer privileges than he had at NCCF. He had fewer phone and visiting rights, his ability to keep personal items in his cell was restricted, he was required to be in his cell more often, his movements within the prison were limited more, and he was in a higher-security facility. The job that Mr. Freitas eventually gained at Anamosa paid significantly less than his job at NCCF, and Mr. Freitas also lost the ability to earn a "good time" work bonus during the interim between his arrival at Anamosa and his new job, although this loss evidently had no practical effect on the duration of his sentence, because he was paroled approximately sixteen years before his release date and no previously earned time was revoked.

Mr. Freitas contends that the transfer deprived him of a favorable parole opportunity by causing his cousin to decide not to sponsor him after his release. The trial court found, however, that something that occurred between him and his cousin during a visit after his transfer caused her to change her mind. After a careful review of the record, we believe that that finding is not clearly erroneous and therefore find that the transfer's effects were limited to the undisputed facts described above.

We believe that as a matter of law these conditions do not constitute an "atypical and significant" hardship, <u>Sandin</u>, 115 S. Ct. at 2300, when compared to the burdens of ordinary prison life. Although Anamosa was a higher-security institution and presented a more restrictive environment than NCCF, there is no liberty interest in assignment to any particular prison. <u>See</u>, <u>e.g.</u>, <u>Moorman v. Thalacker</u>, 83 F.3d 970, 973 (8th Cir. 1996) (transfer from minimum- to medium-security institution). We fail to understand, moreover, why a return to an institution previously

inhabited by an inmate whose custody rating matches that of the institution can be a departure from the ordinary incidents of prison life. See, e.g., Callender v. Sioux City Residential Treatment Facility, 88 F.3d 666, 669 (8th Cir. 1996) (return to prison previously inhabited by inmate upon revocation of work release).

Nor are the ten days of administrative segregation endured by Mr. Freitas, and the thirty days of "on-call" status, the kind of "atypical and significant" deprivations, Sandin, 115 S. Ct. at 2300, that create a liberty interest. See, e.g., Kennedy v. Blankenship, 100 F.3d 640, 642-43 (8th Cir. 1996) (thirty days of "punitive isolation" instead of less-restrictive administrative segregation); Wycoff, 94 F.3d at 1190 (ten days of disciplinary detention and 100 days in maximum-security cell); and Moorman, 83 F.3d at 973 (fifteen days of highest-level disciplinary detention and 107 days of less-restrictive disciplinary detention). Neither Mr. Freitas's loss of a higher-paying job and other privileges, see, e.g., Callender, 88 F.3d at 669, nor the lost ability to earn good time (when no previously earned bonus time had been revoked and the loss evidently had no other practical effect on Mr. Freitas's sentence), see, e.g., Moorman, 83 F.3d at 973, constitutes an atypical hardship.

Because we hold that the conditions of Mr. Freitas's confinement after the transfer do not represent an "atypical and significant" deprivation, Sandin, 115 S. Ct. at 2300, when compared to the ordinary incidents of prison life, we reverse the trial court's judgment for Mr. Freitas. We accordingly have no need to address Mr. Freitas's contention that the amount of the damages awarded to him was inadequate.

III.

On cross-appeal, Mr. Freitas contends that the trial court erred in finding in favor of Ms. Howard on his sexual harassment claim. While we have previously held that prisoners can state a cause of action for sexual harassment under 42 U.S.C. § 1983, Watson v. Jones, 980 F.2d 1165, 1166 (8th Cir. 1992), we have never specified the underlying basis for such claims. We believe that because the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the "'unnecessary and wanton infliction of pain,'" Whitley v. Albers, 475 U.S. 312, 319 (1986), quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976) (opinion of Stewart, Powell, and Stevens, JJ.), forbidden by the Eighth Amendment. Accord, see Boddie v. Schnieder, 105 F.3d 857, 860-61 (2d Cir. 1997); Harris v. Ostrout, 65 F.3d 912, 915-16 (11th Cir. 1995) (per curiam); and Jordan v. Gardner, 986 F.2d 1521, 1524-25 (9th Cir. 1993) (en banc). To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused "pain" and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind. See, e.g., Hudson v. McMillian, 503 U.S. 1, 8 (1992).

Mr. Freitas argues that the trial court erred in its analysis by holding that Ms. Howard's actions did not cause him "pain." After a careful review of the record, we are certain that the trial court did not clearly err in finding that the relationship between Mr. Freitas and Ms. Howard was consensual and that Mr. Freitas welcomed it. The trial court found that although Ms. Howard initiated the relationship, both she and Mr. Freitas helped perpetuate it. Mr. Freitas, for example, initiated the first kiss between the two, wrote Ms. Howard "hot sexy" letters approximately

every other day, and discussed with her the possibility of living together after his release. The manner in which Mr. Freitas described the nature of the relationship, moreover, suggests that Mr. Freitas did not find Ms. Howard's attention unwelcome. Mr. Freitas himself used the term "relationship" to describe the interactions between him and Ms. Howard (an unlikely characterization if their arrangement was not, in fact, voluntary), tacitly admitted that he bore some responsibility for the affair by writing that "[t]his isn't all my fault," and indicated that the reason that he ended the relationship was because he felt hurt that she had lied to him.

The record contains no evidence, other than Mr. Freitas's unsubstantiated assertions, supporting his claim that he succumbed to Ms. Howard's advances because she was his boss and he feared the possible negative consequences of reporting her actions. In short, there is not much evidence suggesting that Ms. Howard put Mr. Freitas in a "no-win" situation, and, more to the point, there is ample evidence supporting the trial court's finding that their relationship was consensual in the freest sense of the word. Without deciding at what point unwelcome sexual advances become serious enough to constitute "pain," we hold that, at the very least, welcome and voluntary sexual interactions, no matter how inappropriate, cannot as matter of law constitute "pain" as contemplated by the Eighth Amendment. Because we hold that Mr. Freitas has not established the existence of the objective component of a cause of action under the Eighth Amendment, we need not discuss the subjective component. We therefore reject Mr. Freitas's argument that the trial court erred in finding for Ms. Howard on his sexual harassment claim.

IV.

For the foregoing reasons, we reverse the trial court's holding that Mr. Ault violated Mr. Freitas's due process rights by transferring him to Anamosa without a hearing.  We affirm the trial court's holding with respect to the sexual harassment claim against Ms. Howard.  Finally, we remand the case to the trial court for the entry of an appropriate judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

9