Dorothy CARRIGAN, Plaintiff,

v.

Peter DAVIS, Defendant.

No. 96–8–JJF.

United States District Court, D. Delaware.

Sept. 28, 1999.

Martin C. Meltzer, Russ Carmichael, Martin C. Meltzer, Wilmington, DE, for plaintiff.

Christopher J. Curtin, Erisman & Curtin, Wilmington, DE, for defendant.

## OPINION

FARNAN, Chief Judge.

In this action, the Plaintiff, Dorothy Carrigan, an inmate at the Women's Correctional Institute ("WCI"), alleges claims under 42 U.S.C. § 1983 and state law against the Defendant, Peter Davis, a former correction officer at the prison. Specifically, the Plaintiff alleges that Defendant Davis violated her Fourth, Eighth and Fourteenth Amendment rights and acted with gross and wanton negligence, when he sexually assaulted her while she was incarcerated at WCI. Defendant Davis admits that he engaged in a sexual act with the Plaintiff, but Defendant Davis contends that the Plaintiff consented to the act.

The Plaintiff's claims were tried before a jury, and after the completion of the presentations of evidence by both the Plaintiff and Defendant Davis, the Plaintiff moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). The Court granted the Plaintiff's motion and directed a verdict against Defendant Davis on the issue of liability. The Court also concluded that under the circumstances of this case, Defendant Davis could not assert the Plaintiff's alleged consent as a defense to the claimed constitutional violations.

This Opinion sets forth the Court's reasons for granting the Plaintiff's application for judgment as a matter of law on the issues of liability and the consent defense.

## BACKGROUND

### I. Procedural Background

On January 10, 1996, the Plaintiff filed a ten count Complaint alleging claims based on 42 U.S.C. § 1983 and state law against the State of Delaware, the Delaware Department of Correction, several administrative officials of the Delaware Department of Correction in their official and individual capacities, and correction officer, Peter Davis, in his official and individual capacity.[1] On May 10, 1996, the Plaintiff dismissed the State of Delaware, the Delaware Department of Correction and all defendants in their official capacities.

On February 18, 1997, the Court granted the Administrative Defendants' Motion For Summary Judgment (D.I.14) on the ground that the Plaintiff's evidence was not sufficiently probative as a matter of law and, in the alternative, that the Administrative Defendants were entitled to qualified immunity. *Carrigan v. State of Delaware*, 957 F.Supp. 1376 (D.Del.1997). However, the Court denied Defendant

---

1. Following Defendant Davis' arrest on charges of engaging in sex in a detention facility, Defendant Davis resigned from his position as a correction officer at WCI.

Davis' Motion For Summary Judgment, concluding that the issue of the Plaintiff's consent to the admitted sexual act posed a genuine issue of material fact.

In response to the Court's February 18 Order, the Plaintiff requested that the case be stayed pending appeal of the Court's decision to grant summary judgment in favor of the Administrative Defendants, because only the claims against Defendant Davis remained. The Court denied the Plaintiff's motion to stay pending appeal, and the case proceeded to trial.

Following the presentation of evidence by both the Plaintiff and Defendant Davis at trial, the Plaintiff made an application under Rule 50(a) for judgment as a matter of law on the issues of liability and consent. The Court granted the Plaintiff's motion and directed a verdict against Defendant Davis on the issue of liability. The Court further concluded, as a matter of law, that Defendant Davis could not assert the Plaintiff's alleged consent as a defense.

Following the Court's ruling on the Plaintiff's Rule 50(a) application, the Plaintiff voluntarily dismissed her state law claims and the jury was instructed on the remaining issues of proximate cause and damages. The jury returned a verdict awarding the Plaintiff $10,000 in punitive damages and nothing in compensatory damages.

## II. Factual Background

According to the Plaintiff, on March 6, 1995, while she was incarcerated at WCI, Defendant Davis entered her room while she was taking an afternoon nap, woke her up, placed his finger over her mouth, and told her to be quiet. Defendant Davis then pulled her to the end of the bed, placed a condom on his penis, and engaged in vaginal intercourse with the Plaintiff against her will. Upon completing the sexual act, Defendant Davis threw the condom on the bed, told the Plaintiff to dispose of it, left the Plaintiff's room and presumably returned to his official duties. Contrary to Defendant Davis instructions, the Plaintiff kept the condom. Later that day, the Plaintiff told another inmate, Eloise Slater, what Defendant Davis had done to her. Slater brought the matter to the attention of the prison administration and an investigation followed.

Defendant Davis admits that a sexual act occurred between him and the Plaintiff in the Plaintiff's room at WCI while he was on duty as a correction officer; however Defendant Davis' account of the incident varies from the Plaintiff's in two respects. First, Defendant Davis claims that he and the Plaintiff engaged in an act of oral sex, not vaginal intercourse. Second, Defendant Davis claims that the Plaintiff consented to the sex act, and further, that the Plaintiff seduced him.

According to Defendant Davis, the Plaintiff seduced him on March 6, 1995, by opening her bathrobe and baring her breasts to him sometime in the morning, and then, while Defendant Davis was making his noon rounds Defendant Davis claims that the Plaintiff asked him to come into her room to look at some pictures. Defendant Davis contends that he hesitated, but the Plaintiff took him by the arm and pulled him halfway into her room. Once Defendant Davis was inside the Plaintiff's room, he claims that the Plaintiff hopped onto her bed, performed an exotic dance, and again opened her nightgown to reveal her naked body.

Then, according to Defendant Davis, the Plaintiff closed the door to her room and asked Defendant to close his eyes because she wanted to show him a "trick." Defendant Davis contends that he closed his eyes and the Plaintiff unzipped his pants, grabbed his penis, pulled it from his pants, and applied a condom to his penis using only her mouth. Defendant Davis says that the Plaintiff then performed the act of fellatio, which culminated in Defendant Davis ejaculating into the condom. Defendant Davis says that the Plaintiff then wanted to have sexual intercourse with him, but he refused.

Defendant Davis contends that the Plaintiff gloated to other inmates about the incident and that she was laughing, happy and excited about her contact with him. Defendant Davis further alleges that the Plaintiff and Ms. Slater conspired to report the incident as a rape, so that the Plaintiff could sue for money and get released from prison early.

As a result of this incident, Defendant Davis was arrested and charged with engaging in sex in a detention facility.[2] Shortly thereafter, Defendant Davis resigned from his position as a correction officer at WCI.

## DISCUSSION

### I. Defendant Davis' Liability For The Violation Of The Plaintiff's Civil Rights Under The Eighth Amendment

A. *Eighth Amendment Jurisprudence*

■ Under the Eighth Amendment of the United States Constitution, penal measures and conditions which violate civilized standards and concepts of humanity and decency are prohibited. *See Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (citations omitted). In the prison context, "not every governmental action affecting the interest or well-being of a prisoner is subject to Eighth Amendment scrutiny;" however, actions which impose the unnecessary and wanton infliction of pain constitute cruel and unusual punishment in violation of the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319–320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).

■ An inmate's claims of sexual harassment and/or abuse constitute a challenge to the inmate's conditions of confinement. *Harris v. Zappan*, 1999 WL 391490, *3 (E.D.Pa. May 28, 1999) (citing *Farmer v. Brennan*, 511 U.S. 825, 847, 114

S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Accordingly, such claims are analyzed under the deliberate indifference standard of the Eighth Amendment.

■ A prison official violates an inmate's rights under the Eighth Amendment when two requirements are met. First, the official's conduct must be objectively serious or must have caused an objectively serious injury to the plaintiff. Second, the prison official must have acted with deliberate indifference or reckless disregard toward the plaintiff's constitutional rights, health or safety. *Farmer*, 511 U.S. at 847, 114 S.Ct. 1970.

■ The first element of the deliberate indifference standard is an objective element. A prison official's conduct is "objectively serious" under the Eighth Amendment if it is incompatible with "contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (citing *Estelle v. Gamble*, 429 U.S. at 103–104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

■ The second element of the deliberate indifference standard is a subjective element. That a prison official acted with deliberate indifference or reckless disregard to an inmate's constitutional rights, health or safety may be established by showing that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970.

### B. *Whether Defendant Davis' Conduct Violated the Plaintiff's Rights Under the Eighth Amendment*

In this case, the Plaintiff contends that the sexual act at issue was nonconsensual vaginal intercourse, while Defendant Davis contends that the act was consensual fellatio. The Court finds this factual discrepancy to be of no import, because, the Court concludes, as a matter of law, that an act

---

**2.** The Court takes judicial notice of the fact that Defendant Davis was found not guilty of

the asserted charge.

of vaginal intercourse and/or fellatio between a prison inmate and a prison guard, whether consensual or not[3], is a per se violation of the Eighth Amendment.

### 1. Contemporary Standards of Decency

In determining whether conduct comports with contemporary standards of decency, the United States Supreme Court has recognized that "[t]he clearest and most reliable objective evidence of contemporary values is the legislation enacted by the country's legislatures." *Penry v. Lynaugh*, 492 U.S. 302, 331, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). In Delaware, the legislature has spoken on the issue of sexual intercourse and fellatio in the context of the prison setting and has concluded that such action, whether consensual or not, constitutes a criminal offense. Pursuant to 11 Del.C. § 1259, an employee of a detention facility or a person in custody is guilty of a class G felony if he or she engages in sexual intercourse or deviate sexual intercourse on the premises of a detention facility.[4] Further, it is no defense under this penal section that such conduct was consensual. The Delaware legislature's express and stringent directive under Section 1259 is persuasive evidence to the Court that sexual intercourse and/or fellatio between prison inmates and guards, whether consensual or not, is intolerable in Delaware, and thus, at odds with contemporary standards of decency.

In addition to the legislation enacted by the Delaware legislature concerning sex in a detention facility, the Court has also considered the prevailing case law in this area. A number of courts have considered incidents of sexual harassment and/or abuse in the prison setting. While the particular facts and circumstances of many of these cases have been insufficient to state an Eighth Amendment claim, courts addressing this issue have consistently recognized that the occurrence of sex acts between inmates and prison guards serves no legitimate penal purpose, may cause severe physical and/or psychological harm and may violate contemporary standards of decency.[5] *See Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir.1997).

For example, in *Boddie v. Schnieder*, the Court of Appeals for the Second Circuit addressed a male inmate's allegations that a female correction officer "made a pass" at him, squeezed his hand, touched his penis and pressed up against him "so hard that he could feel the points of her nipples against [his] chest." 105 F.3d at 860. While the court concluded that none of these incidents, either singly or cumulatively, were egregious enough to state an Eighth Amendment claim, the court did not foreclose the possibility that sexual

---

**3.** Defendant Davis raises the Plaintiff's alleged consent to the sexual act as a defense to the Plaintiff's constitutional claims. Where a prison guard engages in vaginal sexual intercourse and/or fellatio with an inmate of the opposite sex, the Court concludes that the consent defense is unavailable. For a further discussion of the consent defense, see *infra* Section II of this Opinion.

**4.** Section 1259 provides:

A person is guilty of sexual relations in a detention facility when, being a person in custody at a detention facility or being an employee working at a detention facility, the person engaged in sexual intercourse or deviate sexual intercourse on the premises of a detention facility. It shall be no defense that such conduct was consensual.

Violation of this section shall be a class G felony.

11 Del.Code § 1259.

**5.** *See also Jordan v. Gardner*, 986 F.2d 1521, 1524–31 (9th Cir.1993) (en banc) (holding that female inmates stated valid § 1983 claim under the Eighth amendment where prison policy allowed cross-gender clothed body searches); *Watson v. Jones*, 980 F.2d 1165, 1165–66 (8th Cir.1992) (reversing summary judgment in favor of female correction officer where male inmates alleged sexual harassment and sexual fondling during pat frisks); *Galvan v. Carothers*, 855 F.Supp. 285, 291 (D.Alaska 1994) (holding that "minimal standards of privacy and decency include the right not to be subject to sexual advances"), *aff'd*, 122 F.3d 1071 (9th Cir.1997).

contact between guards and inmates could be "objectively, sufficiently serious" so as to constitute an Eighth Amendment violation. *Id.* (holding that severe or repetitive sexual abuse of an inmate by a prison officer can constitute an Eighth Amendment violation).

■ Unlike incidents of fondling, touching or suggestive sexual banter which have been held to be insufficient to state an Eighth Amendment claim[6], this case involves actual sexual intercourse, either vaginal or oral depending on whether one credits the Plaintiff's or the Defendant's testimony, between an inmate and a guard. Given the seriousness of this conduct and the Delaware legislature's criminalization of it in the prison setting, the Court concludes, as a matter of law, that vaginal intercourse and/or fellatio between an inmate and a correction officer in a State of Delaware correction facility violates contemporary standards of decency under the Eighth Amendment.

### 2. Deliberate Indifference or Reckless Disregard

In discussing the second element of the deliberate indifference test under the Eighth Amendment, courts have repeatedly recognized that "where no legitimate law enforcement or penalogical purpose can be inferred from the defendant's alleged conduct," the conduct itself may be sufficient evidence of a culpable state of mind. *Harris,* 1999 WL 391490 at *3; *see also Boddie,* 105 F.3d at 861; *Jones v. Culinary Manager II,* 30 F.Supp.2d 491, 497 (E.D.Pa.1998). Courts considering Eighth Amendment claims involving sexual conduct between prison guards and inmates have repeatedly recognized that such conduct serves no legitimate law enforcement or penalogical purpose. *See e.g. Boddie,* 105 F.3d at 861; *Jordan,* 986 F.2d at 1524–31. Indeed, whether the sexual act between the Plaintiff and Defendant Davis was vaginal or oral, consensual or not, the Court can conceive of no legitimate penalogical purpose which is served by such conduct. In the Court's view, sexual conduct between prison guards and inmates destabilizes the prison environment by compromising the control and authority of the guard over the inmate, compromising the inmate's health, security and well-being and creating tensions and conflicts among the inmates themselves.[7] In Delaware, vaginal intercourse and/or fellatio between an inmate and a guard is itself a felony, and therefore, such conduct is clearly at odds with law enforcement goals. Because vaginal intercourse and/or fellatio between inmates and prison guards serves no legitimate penalogical purpose, is illegal and thus, contrary to the goals of law enforcement, the Court concludes, as a

6. *See e.g. Berryhill v. Schriro,* 137 F.3d 1073 (8th Cir.1998) (holding that inmate failed to state an Eighth Amendment claim against prison maintenance employee where "the brief touch to his buttocks lasted mere seconds, [and] it was not accompanied by any sexual comments or banter"); *Jones v. Culinary Manager II,* 30 F.Supp.2d 491, 497 (E.D.Pa.1998) (holding that single incident in which guard pinned plaintiff to box and ground his pelvis against plaintiff's buttocks while threatening sex not sufficiently serious to state Eighth Amendment claim); *Williams v. J.P. Kane,* 1997 WL 527677, *9 (S.D.N.Y. Aug.25, 1997) (holding that claim that male inmate was fondled on single occasion by male guard during pat-frisk does "not involve a harm of federal constitutional proportions") (citations omitted); *Kaestner v. Mitchell,* 1996 WL 428357, at *1 (N.D.Cal. Jul.24, 1996)

(holding that plaintiff failed to state a claim under Eighth Amendment where guard stood unnecessarily close to him and touched his buttocks).

7. *See e.g. Fisher v. Goord,* 981 F.Supp. 140, 172 (W.D.N.Y.1997). (recognizing that "sexual interactions between correction officers and inmates, no matter how voluntary, are totally incompatible with the order and discipline required in a prison setting and expressing concern over 'the notion that an inmate might feel compelled to perform sexual favors for correction officers in order to be on the officer's 'good side,' but concluding that plaintiff was unable to establish likelihood of success on merits regarding her Eighth Amendment claim of sexual abuse, because plaintiff's testimony was not credible' ").

matter of law, that such conduct by a prison guard in a Delaware correction facility is per se sufficient to establish that the guard acted with a culpable mind. Accordingly, the Court concludes that Defendant Davis' conduct is sufficient evidence, in and of itself, to establish as a matter of law that Defendant Davis acted with deliberate indifference toward the Plaintiff's well-being, health and security.

### 3. Conclusion

In sum, the Court concludes, as a matter of law, that the Plaintiff has established both elements of the deliberate indifference test. Accordingly, the Court concludes that Defendant Davis is liable for a violation of the Plaintiff's civil rights under the Eighth Amendment.

## II. Consent Defense

### A. *Defendant Davis' Contentions*

Although the Plaintiff and Defendant Davis dispute whether the sex act in issue was fellatio or vaginal intercourse, Defendant does not dispute that a sex act occurred between himself and the Plaintiff on March 6, 1995, while the Plaintiff was a prisoner under his supervision. However, Defendant Davis contends that the Plaintiff consented to the sex act, and therefore consented to and/or waived any violation of her civil rights.

In framing his defense, Defendant Davis characterizes the right at issue in this case to be a "right to be free from *unwanted* physical contact." *See Banks v. Lackawanna County Commissioners*, 931 F.Supp. 359 (1996) (emphasis added). In support of this characterization, Defendant notes that the cases involving contact between prisoners and guards refer to the contact with words like "assault" and "attack." According to Defendant Davis, the use of such words implies that the right is to be protected from *unwanted* contact.

With this premise as a basis, the Defendant argues from general concepts of tort law that "[c]onsent to an act is simply willingness that it shall occur," and when "[a]ctual willingness [is] established by competent evidence, [it] will prevent liability." Prosser, *Handbook of the Law of Torts* § 18. Although the Defendant cites no case law on point, the Defendant urges the Court to apply the general tort law of consent to civil rights actions, and conclude that the Plaintiff's alleged consent to the sexual act negates the Defendant's liability for any violation of the Plaintiff's civil rights.

### B. *Legal Standard For Waiver Of Constitutional Rights Generally*

The tort concepts that the Defendant asserts are in some ways similar to the constitutional concepts involved in a consent and/or waiver determination. However, because this action involves claims of a constitutional dimension, the Court concludes that its analysis of Defendant Davis' consent defense should be guided by constitutional law, rather than tort law. In constitutional law, the concepts of waiver and consent appear, perhaps most frequently, in the area of criminal procedure. Although much of the same terminology is used, the exact requirements for waiver and/or consent and the manner in which those requirements are applied, vary depending on which constitutional right is at issue and what underlying policy concerns are raised by the right in question. In an effort to elicit the general standards applicable to waiver and consent in a constitutional setting, the Court will examine the three specific areas: (1) consent to search, (2) waiver of the right to counsel and (3) waiver of the *Miranda* rights.

### 1. Consent to Search

The United States Supreme Court has recognized that a search conducted pursuant to a valid consent is constitutionally permissible. *Katz v. United States*, 389 U.S. 347, 358, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In relying upon consent to justify the legality of a search, the government bears the burden of proving

that the consent was "freely and voluntarily" given. *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Whether consent to a search was "voluntary" is a question of fact that turns on an analysis of the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 224–26, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In examining the totality of the circumstances, no one factor is determinative. For example, in *Schneckloth*, the Supreme Court held that one need not be aware of his right to refuse permission to search, in order to have his consent to the search deemed valid. *Id.* However, the individual's awareness of his right to refuse may be considered as one of several factors in assessing the voluntariness of the accused's consent. *Id.*

 Although the Supreme Court recognized in *Schneckloth* that "a 'consent' is a 'waiver' of a person's rights under the Fourth and Fourteenth Amendments," the Court expressly rejected application of the waiver standards to consent searches. *Id.* at 235, 93 S.Ct. 2041. Unlike the "freely and voluntary" requirements for consent to a search, a waiver requires "an intentional relinquishment or abandonment of a known right or privilege." Stated another way, the waiver must be "knowing" and "intelligent." *See Johnson v. Zerbst*, 304 U.S. 458, 464–65, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In declining to extend the knowing and intelligent waiver requirements to consent searches, the Supreme Court emphasized the policy differences between the Fourth Amendment and those rights to which the waiver standard generally applies, i.e. the rights associated with a fair criminal trial. The Court stated:

There is a vast difference between those rights that protect a fair criminal trial and the rights guaranteed under the Fourth Amendment. Nothing, either in the purposes behind requiring a 'knowing' and 'intelligent' waiver of trial rights, or in the practical application of such a requirement suggests that it ought to be extended to the constitutional guarantee against unreasonable searches and seizures.

A strict standard of waiver has been applied to those rights guaranteed to a criminal defendant to insure that he will be accorded the greatest possible opportunity to utilize every facet of the constitutional model of a fair criminal trial. Any trial conducted in derogation of that model leaves open the possibility that the trial reached an unfair result precisely because all the protections specified in the Constitution were not provided.

\* \* \*

The protections of the Fourth Amendment are of a wholly different order, and have nothing whatever to do with promoting the fair ascertainment of truth at a criminal trial.... The guarantees of the Fourth Amendment stand 'as protection of quite different constitutional values—values reflecting the concern of our society for the right of each individual to be let alone. To recognize this is no more than to accord those values undiluted respect.' ...

*Schneckloth*, 412 U.S. at 241–42, 93 S.Ct. 2041 (citations omitted).

In addition to the different policy concerns implicated by the Fourth Amendment, the Supreme Court noted that, as a practical matter, it would be nearly impossible for a police officer, in the informal and unstructured circumstances of a search situation, to make the detailed examination required to determine whether a waiver was knowing and intelligent. According to the Supreme Court, the waiver standard is more suited "for a trial judge in the structured atmosphere of a courtroom." *Id.* at 245, 93 S.Ct. 2041.

With these concepts in mind, the Court will examine two situations, in which the Supreme Court has determined that the more stringent waiver standard should apply. These areas involve the accused's

right to counsel and the accused's *Miranda* rights.

## 2. Waiver of the Right to Counsel

Unlike the Fourth Amendment, the Sixth Amendment strikes at the heart of the accused's right to a fair trial. In accord with the importance of this constitutional policy, the Supreme Court has indicated that a valid waiver of counsel under the Sixth Amendment must be "knowing" and "intelligent." *See Johnson,* 304 U.S. at 465, 58 S.Ct. 1019. This standard is so strict, that it is not enough for the accused to indicate that he knows of his right to counsel and voluntarily chooses to waive that right. Rather, this standard requires the accused to have a deeper understanding of the manner in which his waiver will impact his circumstances. Such an understanding encompasses a comprehensive examination of all the circumstances the accused is facing, including, but not limited to, the nature of the charges, the offenses included within them, the nature of the punishment, the possible defenses and mitigating factors, and the dangers and disadvantages that could arise from self-representation. *See Von Moltke v. Gillies,* 332 U.S. 708, 723–24, 68 S.Ct. 316, 92 L.Ed. 309 (1948). Thus, in the context of a waiver analysis, voluntariness, absent awareness, is insufficient to constitute a valid waiver.

## 3. Waiver of *Miranda* Rights

Like a waiver of the right to counsel, a waiver of an individual's *Miranda* rights must be voluntary, knowing and intelligent. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In determining whether these criteria are satisfied, the court must make a two step inquiry. First, the court must determine whether the waiver was voluntary. To be voluntary, the waiver must be the product of a free and deliberate choice, rather than the result of intimidation, coercion or deception. *See United States v. Velasquez,* 885 F.2d 1076, 1084 (3d Cir.1989), *cert.*

*denied,* 494 U.S. 1017, 110 S.Ct. 1321, 108 L.Ed.2d 497 (1990). Second, the court must determine whether the waiver was made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Id.*

In ascertaining whether these criteria are satisfied such that an individual has validly waived his *Miranda* rights, the court must consider the totality of the circumstances, including the nature of the interrogation and the background, experience and conduct of the defendant. *United States v. Sriyuth,* 98 F.3d 739, 749 (3d Cir.1996), *cert. denied,* 519 U.S. 1141, 117 S.Ct. 1016, 136 L.Ed.2d 892 (1997) (citations omitted). A waiver under *Miranda* is only valid where the totality of the circumstances indicates " 'both an uncoerced choice and the requisite level of comprehension.' " *Id.* (citations omitted).

While the waiver inquiry under *Miranda* appears to combine the voluntariness requirement for consent to search and the knowingly and intelligently requirements for waiver of the right to counsel, the underlying policy reasons for the waiver approach required by *Miranda* differ from the policy reasons underlying the consent and waiver analyses discussed previously. In *Miranda,* the underlying policy concern that necessitates the use of a strict-waiver standard is that the inherently coercive nature of police questioning and custodial surroundings will exert compelling pressures which will "work to undermine the individual's will to resist and to compel him to speak where he would not otherwise." *Schneckloth,* 412 U.S. at 246, 93 S.Ct. 2041 (citing *Miranda,* 384 U.S. at 458, 86 S.Ct. 1602). Thus, the talismanic approach to *Miranda* is aimed at dispelling the compulsion inherent in the custodial situation and restoring the individual's free choice. *Id.* at 247, 86 S.Ct. 1602 (comparing policy reasons for *Miranda* waiver with policy reasons for consent searches).

B. *Consent or Waiver Under Circumstances of a "Special Relationship"*

Given the various approaches to consent and/or waiver in the constitutional setting, the Court must determine, as a threshold matter, whether it is more appropriate to employ the more lenient consent standard or the more difficult waiver standard to the civil rights violations alleged in this case. Of particular relevance to these determinations is the concept of "special relationship."

■■■ While the Supreme Court has proceeded with caution in the area of special relationships, the Supreme Court has recognized the prison or custodial settings as the foremost example of a situation in which a special relationship exists. *See DeShaney v. Winnebago County Dept. of Soc. Serv.,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *Kneipp v. Tedder,* 95 F.3d 1199, 1204 (3d Cir.1996) (recognizing custodial or prison setting as an example of special relationship). When the State takes a person into custody and holds him or her there against his or her will, the Constitution imposes upon the State and its agents a "corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney,* 489 U.S. at 197–200, 109 S.Ct. 998. As the Court explained in *DeShaney,*

> The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*Id.* Thus, the rationale for finding a special relationship in the prison setting rests primarily on the utter lack of control that the inmate has over basic aspects of his or her life and the complete control that the prison and its employees assume over the inmate. *See D.R. v. Middle Bucks Area Vocational Technical Sch.,* 972 F.2d 1364, 1371 (3d Cir.1992) (recognizing dependence of institutionalized persons, such as prison inmates), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993).

Though based on different circumstances, this rationale is more similar to the rationale used by the Supreme Court in the context of *Miranda* waivers, than to the rationale used in the context of consent searches. With regard to consent searches, the Supreme Court has recognized that "consent searches will normally occur on a person's own familiar territory." *See Schneckloth,* 412 U.S. at 246, 93 S.Ct. 2041. Because the individual is generally not in a custodial situation during a consent search, the individual is not as vulnerable or dependent. *Id.* at 231, 93 S.Ct. at 2049.

Unlike the search context, in the *Miranda* context, the individual is generally in custody, and therefore, the individual is subject to the control and pressures of his restrainers. Indeed, the Supreme Court recognized that the coercive nature of police questioning and custodial surroundings exert compelling pressures which may undermine the individual's free will and compel him or her to speak where he or she otherwise would not. In a custodial setting, be it in prison or in a police questioning room, the individual necessarily relinquishes his or her liberty and submits himself or herself to the control of others. This vulnerability is the basis for the concern that the coercion and pressures of the custodial environment will undermine an individual's will. Thus, when an individual is in a custodial setting, the law provides for extra caution so as to preserve the individual's will.

Perhaps no where is the control dichotomy more pronounced than in the context of the special relationship between prison guards and prisoners. When a special relationship exists, such that the individual

becomes subject to the dominion and control of another and becomes dependent upon another for care and protection, the Court believes that the law requires the Court to proceed with a heightened awareness in determining whether the dependent party waived or consented to the deprivation of his or her constitutional rights. The Court perceives this heightened awareness to be akin to the extra caution that courts have traditionally taken in custodial circumstances, such as in the *Miranda* context described previously.

■ In accord with this heightened awareness, the Court concludes that the proper analysis to be applied in determining whether an inmate consented to a violation by a prison guard of his or her rights guaranteed by the United States Constitution is that of waiver. The party asserting the waiver, in this case, the prison guard, must demonstrate that the inmate's consent to the violation was voluntary, knowing and intelligent. With this standard in mind and the recognition of the policy reasons for embracing it, the Court will proceed to examine whether, the Plaintiff's purported consent established by Defendant Davis' testimony, which the Court accepts as true, is legally sufficient to establish a waiver by the Plaintiff of her civil rights.

#### C. *Analysis of Waiver in this Case*

As stated earlier, the Supreme Court and the Third Circuit have recognized that a special relationship exists between a prisoner and those to whom her care and custody are committed. Thus, with regard to their respective roles as inmate and guard, the Court concludes that a special relationship existed between the Plaintiff and Defendant Davis, such that Defendant Davis assumed responsibility for the Plaintiff's care, protection, custody and control.

Among the duties assumed by Defendant was the duty to refrain from any sexual contact with the Plaintiff. This duty was not only codified in the training materials received by Defendant Davis, but also in 11 Del.Code § 1259, which criminalizes sexual conduct between inmates and detention facility employees.

However, a violation of 11 Del.Code § 1259 does not establish a violation of a constitutional right for purposes of establishing a Section 1983 violation, and the Court does not refer to this statute to elevate it to a constitutional level. Rather, the Court believes that in this context, the statute has a two-fold application. First, this statute emphasizes the special relationship between the Plaintiff and Defendant Davis as inmate and prison guard. As this statute makes clear, the relationship is not a social or personal relationship, it is a custodial relationship in which one party relies on the other party for care and protection. By criminalizing the conduct that would otherwise be noncriminal if performed by two consenting adults, the statute acknowledges the uniqueness of the custodial environment. Second, by eliminating consent as a defense to this crime, the statute recognizes the vulnerability of inmates to abuse by those empowered to control the inmate's existence. As such, this statute confirms the Court's view that it must stringently examine whether the waiver requirements can be satisfied in this context.

■ Under the circumstances of the instant case, and after fully crediting the Defendant's version of the March 6, 1995 incident, the Court concludes, as a matter of law, that the Defendant cannot establish a voluntary, knowing and intelligent waiver by the Plaintiff. The element that the Court finds lacking in this case is the voluntary element of the waiver analysis.[8]

---

8. Because the Court concludes that voluntariness cannot be established as a matter of law, the Court concludes that Defendant Davis could not establish that the Plaintiff's consent was "free and voluntary." Thus, even if the Court were to apply the less stringent consent standards, rather than the waiver standards, the Court would still conclude that Defendant Davis could not, as a matter of law establish the Plaintiff's consent.

Examining the totality of the Plaintiff's circumstances as a prisoner, the control the institution necessarily maintained over her, and the lack of control which she maintained over her own life, the Court concludes, as a matter of law, that the Plaintiff was incapable of giving a voluntary waiver.[9]

### D. *The Effect of Recent Case Law on the Consent Defense*

Since the trial in this case, the Court is aware of only two cases that have addressed the issue of an inmate's consent to alleged sexual abuse by a prison guard, *Freitas v. Ault,* 109 F.3d 1335, 1339 (8th Cir.1997) and *Fisher v. Goord,* 981 F.Supp. at 172–175. While both the *Freitas* court and the Fisher court recognized that sexual conduct between inmates and guards serves no legitimate penalogical purpose and may rise to the level of an Eighth Amendment claim, neither court found the facts before them sufficient to state a claim under the Eighth Amendment.

In *Freitas,* the Court of Appeals for the Eighth Circuit addressed a male inmate's claim that he was sexually harassed by a female prison employee. While the court recognized that such conduct "can never serve a legitimate penalogical purpose," the court held that the plaintiff could not establish an Eighth Amendment claim, because the relationship was consensual. 109 F.3d at 1338. According to the court, "voluntary sexual interactions, no matter how inappropriate, cannot as a matter of law constitute 'pain' as contemplated by the Eighth Amendment." *Id.* at 1339.

The Court is not persuaded by the rationale in *Freitas* for several reasons.

First, the conduct in *Freitas* between the male inmate and the female prison official constituted kissing, hugging, talking and writing "hot sexy" letters. *Id.* at 1338. Even if nonconsensual, the Court believes that such conduct is arguably insufficient to state an Eighth Amendment claim, because objectively, it is not as serious as the conduct alleged in this case. In this case the conduct is admitted sexual intercourse, whether vaginal or oral. Thus, the Court concludes that *Freitas* is factually inapposite to the instant case.

Second, the *Freitas* court only examined consent insofar as it pertained to the first element of the deliberate indifference standard. *Id.* Because the conduct was consensual, the *Freitas* court reasoned that the plaintiff could not establish pain under the objective element of the Eighth Amendment deliberate indifference test. The Freitas court did not examine consent as a defense, and therefore, did not have occasion to consider the effect of the prison setting on the voluntary nature of the plaintiff's alleged consent. Further, unlike the *Freitas* court, this Court is guided in its decision that vaginal intercourse and/or fellatio is at odds with contemporary standards of decency under the Eighth Amendment by the Delaware legislature's directive making such conduct a felony.[10] Accordingly, the Court finds *Freitas* to be distinguishable from the instant case.

Relying in part on the *Freitas* decision, the District Court for the Western District of New York concluded that the plaintiff,

**9.** While the Court is aware that the Western District of New York recently rejected this argument in *Fisher,* 981 F.Supp. at 172–175, the Court notes that commentators and researchers in this area have long recognized the difficulty of finding consent in the custodial setting. *See e.g. Human Rights Watch Women's Rights Project, All Too Familiar: Sexual Abuse of Women in U.S. Prisons* 290, 284 n. 13 (1996) (recognizing that "[w]here you have power over a person, it cannot be consensual...."); Laurie A. Hanson, Comment, *Women Prisoners: Freedom from Sexual*

*Harassment—A Constitutional Analysis,* 13 Golden Gate U.L.Rev. 667, 685 (1983) ("Sexual relationships between inmates and guards are the product of sexual exploitation and cannot be defined as voluntary.").

**10.** For a discussion of 11 Del.C. § 1259 in the context of the Court's conclusion that vaginal intercourse and/or fellatio is a per se violation of the Eighth Amendment see *infra* Section I.B. of this Opinion.

Amy Fisher, could not establish a likelihood of success on the merits with regard to her Eighth Amendment claim. *Fisher*, 981 F.Supp. at 172–175. While the *Fisher* court recognized that a "correction officer's position of authority over an inmate is a factor that should be considered when determining, factually, whether or not there was consent," the court stated that "plaintiffs have cited no case law or applicable statutory authority to support the proposition that an inmate may never, as a matter of law, consent to sexual relations with a correction officer." *Id.* at 175.

To the extent that the *Fisher* court relied on the *Freitas* decision in reaching its conclusion that "an inmate may consent to sexual relations with a prison employee," the Court is unpersuaded by the *Fisher* court's rationale for the reasons discussed previously. *Id.* However, the Court observes that the *Fisher* court expressly recognized that its holding concerning the plaintiff's alleged consent would be different if it were faced with a statutory directive proscribing sexual conduct between inmates and prison guards. As the *Fisher* court recognized, at the time of the plaintiff's allegations of sexual abuse, the State of New York had not yet enacted N.Y. Penal Law 130.05(3)(e). Under Section 130.05(3)(e), sexual relations of any kind between an inmate and a correction officer constitute statutory rape. Addressing this statute, the *Fisher* court stated that "the fact that it was necessary to enact such a law, combined with the lack of evidence of any prior prohibition, would indicate that, *before the new law's passage*, an inmate could, as a matter of law, consent to sexual relations with a correction officer." *Id.* at 175 (emphasis added). Accordingly, the *Fisher* court expressly recognized that the passage of Section 130.05(3)(e) could, as a matter of law, preclude an inmate from consenting to sexual relations with a guard.

Unlike the State of New York, the State of Delaware had, at the time of the occurrence of the acts alleged by the Plaintiff, enacted a law prohibiting sexual relations between an inmate and guard, making such conduct a felony, and precluding consent from being asserted as a defense to the crime. 11 Del.C. § 1259. Thus, by recognizing the effect of a similar statute on the issue of consent, the *Fisher* case supports the Court's conclusion that, as a matter of law, the consent defense is unavailable to a prison guard who engages in vaginal sexual intercourse and/or fellatio with an inmate.

### E. *Conclusion*

In sum, the Court concludes as a matter of law, that the Plaintiff could not voluntarily waive her constitutional rights under the circumstances of this case. Because this is a legal conclusion, it is of no import, whether as a factual matter, the Plaintiff invited Defendant Davis into her room or initiated the sexual encounter. Even if the Plaintiff did these things, it does not alter Defendant Davis' special responsibilities toward the Plaintiff based on his control and supervision over her. As such, the Court concludes that, to the extent that there may have been a factual willingness of the part of the Plaintiff to engage in a sexual act with Defendant Davis, this willingness is simply insufficient to amount to a legally valid, voluntary waiver. Stated another way, the Court concludes, as a matter of law, that the consent defense is unavailable to Defendant Davis under these circumstances.

### CONCLUSION

For the reasons set forth in this Opinion, judgment as a matter of law pursuant to Rule 50(a), has been entered in favor of Plaintiff.

A copy of this Opinion will be added to and made a part of the trial record in this case.