CLD-172                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1515
_____

MARK-ALONZO WILLIAMS,
Appellant

v.

JOHN E. WETZEL, Secretary; MR. JAMES C. BARNACLE, Director;
JAY LANE, Superintendent; MR. ERIC ARMEL, Deputy Warden;
MR. WESLEY TIFT, Captain; WILLIAM LOWDEN, Lieutenant;
MR. KEITH GRAFT, Corrections Officer (one); DR. PETER SAAVEDRA;
MS. RHONDA HOUSE, Grievance Coordinator

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:16-cv-01233)
District Judge: Honorable Nora B. Fischer

_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2), or for
Possible Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
April 25, 2019
Before: CHAGARES, RESTREPO and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: June 4, 2019)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Mark-Alonzo Williams is a Pennsylvania inmate currently confined at SCI-Huntingdon. Williams seeks review of an adverse judgment entered by the District Court in this pro se civil rights case.

Williams's operative pleading is his second amended complaint ("the Complaint"). The Complaint is a sprawling work that defies Rule 8(a)(2)'s call for "a short and plain statement of the claim [or claims] showing that the pleader is entitled to relief." Nevertheless, the Complaint's allegations appear to generally include that:

Williams is mentally ill, and objects to various elements of his diagnoses and treatment; he has threatened or attempted suicide multiple times; Williams has been in several fights - there are more than a dozen inmates from whom he must stay separated; he has spent significant time in solitary confinement; in May 2015, he "wrote a graphic, violent letter about" two prison employees and mailed it to an official with the Pennsylvania Department of Corrections ("the DOC"), which earned Williams a "high risk" designation; he has been subjected to multiple prison transfers; he has never had a cellmate in state prison; he was subjected to a lien on, and collections from, his inmate bank account; Williams has been threatened and sexually harassed by inmates and corrections officers alike; and prison officials have interfered with Williams's inmate grievances, his mail, and his access to the law library.[1]

_____

[1] We have omitted allegations that are not germane to Williams's claims against the named defendants.

2

Williams's Complaint contains 500-plus paragraphs of factual material, and lists nine claims. As the Magistrate Judge observed, the Complaint fails to "specify[] any particular paragraphs that apply" to each claim. Analyzing motions to dismiss filed by Dr. Peter Saavedra (a DOC contract-psychiatrist) and the other named defendants (the "Commonwealth Defendants"), the Magistrate Judge performed admirably in endeavoring to decipher the nature of Williams's claims.

The Magistrate Judge, after giving proper notice, converted Dr. Saavedra's motion to dismiss into one for summary judgment on the issue of exhaustion of remedies under the Prison Litigation Reform Act. The Magistrate Judge concluded that while Williams grieved his issues with Dr. Saavedra at least initially, he did not complete the three-step grievance procedure in the manner prescribed by DC-ADM 804, and thus Dr. Saavedra's motion for summary judgment should be granted.[2] Over Williams's objections, the District Court agreed and granted Dr. Saavedra's motion.[3]

The Magistrate Judge next addressed the Commonwealth Defendants' motion to dismiss. The Magistrate Judge determined that Williams failed to adequately plead a claim of retaliation under the First Amendment for various reasons, including that (1) his threatening May 2015 letter about two prison staff members either did not qualify as

---

[2] Cf. Jones v. Bock, 549 U.S. 199, 218 (2007) ("[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself.") (citation omitted).

[3] The District Court denied Williams's multiple motions for reconsideration of its order granting summary judgment to Dr. Saavedra.

constitutionally protected conduct[4] or was not accompanied by sufficient facts showing a causal connection between the letter and one of Williams's many prison transfers,[5] and (2) his written communication about issues with his "inmate separations" was not followed in unusually suggestive temporal proximity by any retaliatory acts,[6] let alone by acts plausibly traceable to the relevant defendants.[7]

With respect to Williams's sexual harassment claim under the Eighth Amendment, the Magistrate Judge observed that this Court had "not specifically addressed the circumstances under which a correctional officer can be held liable for the sexual harassment of an inmate." The Magistrate Judge found guidance from other circuits in

---

[4] Cf. United States v. Fullmer, 584 F.3d 132, 154 (3d Cir. 2009) (observing that "while advocating violence that is not imminent and unlikely to occur is protected, speech that constitutes a 'true threat' is not") (quoting Watts v. United States, 394 U.S. 705, 708 (1969)).

[5] Cf. Wisniewski v. Fisher, 857 F.3d 152, 156 (3d Cir. 2017) ("To state a claim for retaliation, a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) he suffered some adverse action at the hands of prison officials, and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take that action.") (citation and internal quotations omitted).

[6] Cf. Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) ("To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.")

[7] Cf. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*.").

concluding that Williams's claim failed as a matter of law for want of allegations of, at a minimum, physical "contact or touching" or threatened sexual violence.[8]

For Williams's conditions-of-confinement claim under the Eighth Amendment, the Magistrate Judge determined, inter alia, that Williams failed to "allege[] facts indicating that he was denied life's basic necessities such as food, clothing, shelter and exercise."[9] And for Williams's denial-of-medical care claim under the Eighth Amendment against the Commonwealth Defendants, the Magistrate Judge determined that the claim failed because Williams was admittedly being treated by Dr. Saavedra at all relevant times.[10]

Turning to the purported Fourteenth Amendment claims in the Complaint, the Magistrate Judge determined that Williams failed to "provide any factual support" for his Due Process Clause claims regarding improprieties with prison officials' handling of his

_____

[8] See, e.g., Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997); Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000).

[9] Cf. Rhodes v. Chapman, 452 U.S. 337, 347 (1981) ("To the extent that [prison] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992) (explaining that placing an inmate in restricted housing does not violate the Eighth Amendment "as long as the conditions of confinement are not foul, inhuman or totally without penological justification").

[10] See Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987) (cataloguing various ways in which prison authorities may be deliberately indifferent to an inmate's serious medical needs); cf. Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (concluding that non-physician prison officials could not be considered "deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor").

grievances (and also failed to allege a protected 'liberty' interest, in any event).[11]  For

Williams's Equal Protection Clause claim based on allegedly unconstitutional placement

in solitary confinement and other separate celling, the Magistrate Judge determined that

Williams failed to adequately plead discrimination either as a member of a protected

class or as a so-called 'class of one.'[12]  Addressing Williams's claim regarding the

allegedly improper takings of his property, the Magistrate Judge determined that

Williams failed to adequately plead that he was without a meaningful post-deprivation

remedy to challenge prison officials' confiscation of letters, or deductions from his

inmate account.[13]

The Magistrate Judge concluded that permitting Williams leave to further amend

the Complaint would be futile, and recommended that the Complaint be dismissed with

prejudice.  Over Williams's objections—in which he characterized the Magistrate

---

[11] See Sandin v. Conner, 515 U.S. 472, 484 (1995) (requiring that an inmate's due process claim under the Fourteenth Amendment describe "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"); cf. Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.").

[12] Cf. Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006) ("According to [the 'class of one'] theory, a plaintiff states a claim for violation of the Equal Protection [C]lause when he 'alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'") (citation omitted).

[13] Cf. Hudson v. Palmer, 468 U.S. 517, 533 (1984) (holding that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available").

Judge's report as "well-crafted" and conceded that at least part of its analysis was correct—the District Court agreed with all of the Magistrate Judge's determinations, dismissed the Complaint with prejudice, and entered final judgment against Williams under Fed. R. Civ. P. 58. This appeal followed.

We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review of orders granting motions to dismiss and motions for summary judgment.[14] In reviewing an order granting a motion to dismiss, we accept the factual allegations as true, and we draw all reasonable inferences in the light most favorable to the pleading party.[15] Summary judgment is appropriately entered when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[16]

We will summarily affirm the judgment of the District Court.[17] Williams's claims all were correctly disposed of, for substantially the reasons given in the Magistrate Judge's commendably thorough reports dated August 15 and December 28, 2017. We supplement those reports only with respect to Williams's sexual harassment claim under the Eighth Amendment, and only as against Corrections Officer Graft. We do so because after judgment was entered below, this Court issued its opinion in Ricks v. Shover, which

---

[14] See Gallo v. City of Philadelphia, 161 F.3d 217, 221 (3d Cir. 1998) (summary judgment); Lorenz v. CSX Corp., 1 F.3d 1406, 1411 (3d Cir. 1993) (motion to dismiss).

[15] Lorenz, 1 F.3d at 1411.

[16] See Fed. R. Civ. P. 56(a).

[17] See 3d Cir. L.A.R. 27.4 (2011); 3d Cir. I.O.P. 10.6 (2018).

7

held for the first time in this Circuit that "sexual abuse of inmates by prison officials offends the Eighth Amendment."[18]

Specifically, in Ricks, we held that sexual conduct by prison officials directed at inmates is for Eighth Amendment purposes to be evaluated using the objective/subjective test for cruel and unusual punishment claims from Hudson v. McMillian, 503 U.S. 1, 8 (1992).[19] "Regarding the subjective prong, we consider whether the official had a legitimate penological purpose or if he or she acted 'maliciously and sadistically for the very purpose of causing harm.'"[20] For the objective prong, we were "not persuaded that the current standard is zero tolerance for all minor sexualized touching in prison, such that all such claims are objectively serious to a constitutional degree."[21] Rather, the "inquiry is necessarily contextual" and "fact-specific."[22] That said, we observed that "it goes without saying that objectively serious sexual contact would include sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline."[23]

---

[18] 891 F.3d 468, 473 (3d Cir. 2018).

[19] See Ricks, 891 F.3d at 475.

[20] Id.
[21] Id. at 475, 477.

[22] Id. at 478.

[23] Id.

8

The factual allegations relevant to Williams's Eighth Amendment claim against Graft—ably collected by the Magistrate Judge at pages 12 and 13 of her December 28, 2017 report—are not sufficient to adequately plead an Eighth Amendment claim. Even without the guidance of <u>Ricks</u>, the Magistrate Judge correctly perceived that Williams's claim failed as a matter of law because, "[w]hile [Williams's] allegations may indicate that CO Graft made offensive comments . . . or acted inappropriately, the allegations do not involve any sexual contact between [Williams] and CO Graft."

Therefore, for the reasons given above, we will summarily affirm.