**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 8, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LAURA LOBOZZO,

  Plaintiff - Appellant,

v.

THE COLORADO DEPARTMENT OF
CORRECTIONS; LA VISTA
CORRECTIONAL FACILITY;
ARISTEDES W. ZAVARAS, individually
and in his capacity as Director of the
Colorado Department of Corrections;
SUSAN JONES, individually and in her
capacity as Warden of La Vista
Correctional Facility; GARY GOLDER,
individually and in his capacity as an
administrator of the Colorado Department
of Corrections; LARRY REID, individually
and in his capacity as Warden of the La
Vista Correctional Facility; JAMES E.
ABBOTT, individually and in his capacity
as an administrator of the Colorado
Department of Corrections,

  Defendants - Appellees.

ANTHONY MARTINEZ,

  Defendant.

No. 10-1396
(D. Colo.)
(D.C. No. 1:08-CV-01829-RPM)

**ORDER AND JUDGMENT**<sup>*</sup>

---

  <sup>*</sup> This order and judgment is an unpublished decision, not binding precedent. 10th
Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. P.
32.1. It is Appropriate as it relates to law of the case, issue preclusion and claim
preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir.

Before **MURPHY**, **HARTZ**, and **O'BRIEN**, Circuit Judges.

Laura Lobozzo filed a 42 U.S.C. § 1983 claim against officials of the Colorado Department of Corrections (CDOC) claiming sexual contact between she and a correctional officer was caused by the lack of adequate preventive policies and procedures. The district court entered summary judgment in favor of the defendants based on qualified immunity. We affirm.

## I.       BACKGROUND

Lobozzo was an inmate at the Pueblo, Colorado, La Vista Correctional Facility in 2007. Sometime in May or June 2007, Lobozzo began to have sexual contact with correctional officer Anthony Martinez while assigned to his work unit. She did not tell anyone but in June 2007, rumors of the relationship began to spread. At Martinez's urging Lobozzo asked for a meeting with other officers to quell the rumors. On June 8, 2007, Martinez and Lobozzo met with several female officers. Lobozzo denied she was having a sexual relationship with Martinez. Nevertheless, at the conclusion of the meeting the other officers advised Martinez to let others work with Lobozzo. Apparently Martinez ignored this advice because, on July 15, 2007, another female officer caught Lobozzo and Martinez in a custodian's closet. Although dressed, their clothes were rumpled and Martinez was in an obvious state of arousal. As she was unsure what to do, the officer waited four hours before reporting the incident. Martinez was suspended the

R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

next day[1] and Lobozzo was placed in administrative segregation. She was transferred to the Cañon City Colorado Women's Correctional facility within days and again placed in a segregation unit.

On August 27, 2008, Lobozzo filed a § 1983 action against Aristedes Zavaras, Executive Director of the CDOC, Gary Golder, Director of Prisons in 2007, Susan Jones, warden at the La Vista facility from October 2006 through September 2007, Larry Reid, Warden at the La Vista facility from September 2007,[2] and James Abbott, warden at the Cañon City facility in 2007 (collectively the CDOC Defendants).[3] The complaint alleged the CDOC Defendants violated Lobozzo's Eighth Amendment rights by their deliberate indifference to the possibility of sexual abuse of inmates by custodial staff and they violated her First Amendment rights by establishing a policy of punishing victims for speaking about such abuse.

After a hearing on the CDOC Defendants' motion for summary judgment, the district court determined they were entitled to qualified immunity because Lobozzo failed to show how they caused any constitutional violation. It entered summary judgment accordingly.

Lobozzo now argues the CDOC Defendants violated her Eighth Amendment rights by failing to draft, review or enforce adequate protective policies in spite of their

---

[1] He was also charged with, and pled guilty to, a criminal violation.

[2] On appeal, Lobozzo concedes there is insufficient evidence against Reid. (Appellant's Br. at 8.)

[3] She also named Martinez as a defendant but he filed for bankruptcy and was dismissed from the action.

knowledge that female prisoners were subject to sexual assault.

## II.   DISCUSSION

We review de novo a district court's decision to grant summary judgment asserting qualified immunity. *Armijo ex. rel. Armijo Sanchez v. Peterson*, 601 F.3d 1065, 1070 (10th Cir. 2010), *cert. denied*, 131 S. Ct. 1473 (2011).  Qualified immunity recognizes the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982) (quoting *Butz v. Economou*, 438 U.S. 478, 508 (1978)).  It protects federal and state officials from liability for discretionary functions, and from "the unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).  Issues of qualified immunity are best resolved at the "earliest possible stage in litigation." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. (quotations omitted).

> When a defendant asserts qualified immunity at summary judgment, the responsibility shifts to the plaintiff to meet a "heavy two-part burden," demonstrating, first, that the defendant's actions violated a constitutional or statutory right and, second, that the right at issue was clearly established at the time of the defendant's allegedly unlawful conduct.  In assessing whether the right was clearly established, we ask whether the right was sufficiently clear that a reasonable government officer in the defendant's shoes would understand that what he or she did violated that right.  If the plaintiff fails to satisfy either part of the two-part inquiry, we must grant the

defendant qualified immunity.

*Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007) (citations omitted).

A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be "indisputable" and "unquestioned." *Zweibon v. Mitchell*, 720 F.2d 162, 172-173 (D.C. Cir. 1983). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001) (quotation and citation omitted).

The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including reasonable safety from serious bodily harm. *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). The prisoner must show "the alleged injury or deprivation [is] sufficiently serious" and "the prison official must have a sufficiently culpable state of mind to violate the constitutional standard." *Id*. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety . . . ." *Farmer*, 511 U.S. at 837. The official must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. The official's "failure to alleviate a significant risk of which he was unaware, no matter how obvious the risk or

- 5 -

how gross his negligence in failing to perceive it, is not an infliction of punishment and therefore not a constitutional violation." *Tafoya*, 516 F.3d at 916. "[E]ven if a prison official has knowledge of a substantial risk of serious harm to inmates, he is not deliberately indifferent to that risk unless he is aware of and fails to take reasonable steps to alleviate that risk." *Id.* "[A] plaintiff must plead [and demonstrate] that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009). Although deliberate indifference is a subjective inquiry, "a jury is permitted to infer that a prison official had actual knowledge of the constitutionally infirm condition based solely on circumstantial evidence, such as the obviousness of the condition" -- a risk so obvious a reasonable man "might well infer that the prison official did in fact realize it." *Tafoya*, 516 F.3d at 916-17.

It is uncontested that Lobozzo, an inmate, could not legally consent to sexual activity with Martinez, a guard. And no one disputes that rape is sufficiently serious to constitute a constitutional violation. The question is whether these defendants were aware of and ignored an excessive risk that Lobozzo would be subjected to sexual contact by a correctional officer.

Lobozzo claims the statistics reported by the CDOC under the Prison Rape Elimination Act (PREA) from 2005 forward reveal an average of "one to two . . . rapes per month" at CDOC facilities and such revelations gave the officials constructive notice

of the danger.[4]  (Appellant's Br. at 3.)  Lobozzo assumes[5] Warden Jones knew about the guard's meeting in June and should have intervened at that time.  Lobozzo points to Jones' knowledge of one incident in the previous March where Martinez entered a cell while an inmate was dressing and he continued to do a cell search despite the fact the inmate was in her underwear and "was pulling up her pants when he walked in."  **[130]** Lobozzo also asserts the CDOC's deliberate indifference is further demonstrated by Warden Abbott's failure to ensure she was given the proper medical or mental health treatment following her transfer to Cañon City after the Martinez assault came to light.

To establish the known risk of sexual assault on her, Lobozzo relies almost exclusively on the CDOC's expert's deposition testimony relating to the PREA statistics from 2005 through 2007 compiled by the CDOC.  The report contains numbers of incidents of specific types of conduct.  Relevant here, the report identifies incidents of: (1) staff-on-inmate sexual assault, defined as "unwanted sexual intrusion or penetration by force, threat, coercion or intimidation;" (2) staff-on-inmate sexual conduct defined as "inappropriate  sexual contact between Staff and Inmates which includes romantic relationships, love letters, or sexual activity;" (3) staff-on-inmate sexual harassment which includes "comments and gestures;" and (4) staff-on-inmate sexual misconduct

---

[4] Labozzo complains that certain CDOC policies provide an opportunity for male guards' abuse of female inmates and that CDOC is not in compliance with other of its policies meant to prevent this situation.  She does not, however specifically identify the policies or include them in the record.

[5] Warden Jones testified in her deposition that she could not "say with any certainty that [she] heard about the June [issues]." (Appellant's App'x. at 140.)  There is no testimony stating Jones knew about the meeting.

- 7 -

which includes "active or passive sexual contact, grabbing or fondling. This is usually reported as part of a staff pat search of offenders." (Appellant's App'x at 70.)

The expert stated the numbers revealed that, in the state of Colorado, "it seems like in terms of founded cases [of guard-on prisoner sexual misconduct], maybe one or two a month." (Appellant's App'x at 150.) But this statement ignores the undisputed fact that, from 2005 through 2007 – until Lobozzo's incident, there were no substantiated occurrences in any of these categories at the La Vista facility.[6] Thus, there was no evidence demonstrating the CDOC Defendants would reasonably believe Lobozzo was at risk while incarcerated at that facility.

Even looking at the reported numbers for all CDOC facilities, including parole and community corrections, there were two incidents of sexual misconduct and one sexual assault substantiated in 2007, an average of 22 substantiated reports of sexual conduct each year from 2005 through 2007, and a total of five substantiated reports of sexual harassment. Lobozzo did not present any evidence of the number of sexual conduct incidents which actually involved "sexual activity." She presented no contextual evidence showing the CDOC Defendants would know these raw and ambiguous numbers presented an unreasonable risk to inmates, whether the numbers were higher or lower than the national average, how many of the victims were female or whether a change in

---

[6] In 2005, there was one unfounded report of sexual conduct. In 2006, there was one unfounded report of sexual assault, three unfounded reports of sexual conduct and one unfounded report of sexual harassment. In 2007, there was the substantiated incident of sexual conduct between Martinez and Lobozzo and one unfounded report of sexual misconduct. However, there is no information on the basis of the unfounded report.

- 8 -

CDOC policies would likely reduce these numbers. And although Lobozzo insinuates Warden Jones knew of the rumors concerning the relationship with Martinez but did nothing to stop it, the record belies this claim. Jones' unchallenged testimony stated she did not know of the relationship nor was she aware of the rumors of a relationship prior to July 15, 2007. She "remember[ed] hearing about the issue in March with the entering the room with someone not fully clothed. [But she couldn't] say with any certainty she heard about the June [rumors]." (Appellant's App'x at 140.)[7]

"The mere fact that an assault occurs does not establish the requisite indifference to a prisoner's constitutional rights." *Hovater v. Robinson*, 1 F.3d 1063, 1066 (10th Cir. 1993) (quotations omitted). And "a constitutional violation may not be established by a reliance upon unsupported assumptions." *Id*. at 1068. We do not mean to minimize the seriousness of Martinez's actions and we deplore his victimization of Lobozzo. But just numbers, such as Lobozzo presents, without more, do not create an inference that the CDOC Defendants "had actual or constructive notice that their action or failure was substantially certain to result in a constitutional violation, and they consciously and deliberately chose to disregard the risk of harm." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1319 (10th Cir. 2002) (quotations and citations omitted).

Lobozzo repeatedly asserts the evidence shows there were "two rapes" a month

---

[7] The record is less than clear because the deposition testimony is presented in snippets preventing any clear understanding of the actual context of the witnesses' statements.

within CDOC facilities.[8]  (Appellant's Br. at 3, 9.)  Even if the record supported this claim, there is no reason to assume the mere number of incidents is sufficient evidence of an unreasonable response to a substantial risk in an isolated case.  To so hold would subject every institutional administrator to constitutional liability even if all possible actions were taken to correct an inherently dangerous situation.  This would contradict the standard clearly iterated by the Supreme Court – "a[n individual] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement *only* if [that] official knows that inmates face a *substantial risk* of serious harm and disregards that risk by failing to take *reasonable* measures to abate it." *Farmer*, 511 U.S. at 847 (emphasis added).  The evidence must be robust and focused, not scattered and speculative.

Lobozzo also alleges the CDOC's policy of punishing inmates who reported sexual victimization by placing them in segregation violated her Eighth Amendment rights.[9]  Certainly she was placed in segregation immediately after the incident on July 15, 2007, and again after her transfer to Cañon City.  There is no testimony in the record stating how long she was in segregation after her transfer but, at the summary judgment hearing, her counsel claimed "[i]t was a few weeks as I recall now."  (Appellant's App'x

---

[8] Labozzo consistently refers to the fact there were "two rapes" per month in the CDOC.  She fails to differentiate between incidents of wanted sexual activity and incidents of "romantic relationships [and] love letters," all of which are included in the category of "staff sexual conduct" incidents in the CDOC report.  This category was the subject of the testimony regarding two incidents a month.

[9] Lobozzo apparently withdrew her First Amendment claim at the summary judgment hearing.

at 226.)

The only CDOC policy Lobozzo identified required witnesses to be isolated during the investigation. *See* CDOC Admin. Reg. 100-4. **[232-33]** But she does not argue such isolation is unreasonable. In his deposition, Zavaras said segregation is generally to "protect[] her and the department relative to further allegations." (Appellant's App'x at 120.) He stated the isolation was not meant to punish the victim and it did not go on her record. There is no evidence Warden Abbott knew Lobozzo was placed in segregation when she was transferred or that she remained there (if she did) after the investigation was completed; she never filed a grievance. Similarly, there is no evidence Abbott knew her follow-up medical treatment was not adequate because, again, she did not file a grievance to that effect. Therefore, even if the placement staff and the medical staff somehow failed in their duties to Lobozzo after her transfer, the CDOC Defendants had no personal knowledge of any lack of necessary treatment.

Prisoners are sometimes victims of sexual abuse at the hands of staff and other inmates alike – a tragic fact demanding the attention of prison administrators. But despite Lobozzo's characterization of the record, there is no evidence any of the CDOC Defendants failed to take seriously their responsibility for the safety of inmates. She failed to make a record equal to her rhetoric. The record simply does not support her allegations that the CDOC Defendants knew of and disregarded an excessive risk that she

would be sexually victimized by Martinez.

AFFIRMED.

Entered by the Court:

**Terrence L. O'Brien**
United States Circuit Judge