**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LANCE CONWAY WOOD,
            *Plaintiff-Appellant,*

v.

TOM BEAUCLAIR, Director of
Prisons; KEITH YORDY, OPS; STEVE
WOLFE, OPS; PHIL FOSTER, Warden
of Idaho Correctional Institution of
Orofino (ICIO); DEAN ALLEN,
Deputy Warden of ICIO; ERIC
MACEACHERN, Deputy Warden of
ICIO; SHRIVER, Captain of ICIO;
LAWANDA THOMASON, Lieutenant of
ICIO; KEN ALDREN, Sergeant of
ICIO; ALIS LAHIE, Sergeant at
ICIO; SANDRA DE MARTIN,
Correctional Officer of ICIO;
ATENCIO, Deputy Warden of Idaho
State Correctional Institution; JIM
DORSEY, Sergeant of ISCI; DEBI
TITUS, Health Services
Administrator of ICIO; HILL,
Doctor; WHIPPLE, Nurse of ICIO;
JON-ERIC BAILLIE; VERN MCCREADY,
P.A.,
            *Defendants-Appellees.*

No. 10-35300

D.C. No.
3:04-cv-00099-WBS

OPINION

Appeal from the United States District Court
for the District of Idaho
William B. Shubb, Senior District Judge, Presiding

Argued and Submitted
July 9, 2012—Portland, Oregon

10487

Filed September 4, 2012

Before: Betty B. Fletcher and Harry Pregerson,
Circuit Judges, and Donald E. Walter, District Judge.*

Opinion by Judge B. Fletcher

---

*The Honorable Donald E. Walter, Senior District Judge for the U.S.
District Court for the Western District of Louisiana, sitting by designation.

## COUNSEL

Thomas G. Saunders, Wilmer Cutler Pickering Hale and Dorr LLP, Washington D.C., for the plaintiff-appellant.

Keely E. Duke, Hall, Farley, Oberrecht & Blanton, P.A., Boise, Idaho, for the defendants-appellees.

**OPINION**

B. FLETCHER, Circuit Judge:

Plaintiff-Appellant Lance Conway Wood is a state prisoner in Idaho. Wood allegedly engaged in a romantic, but not sexual, relationship with a female prison guard, Sandra de Martin. Wood alleges that both during and after the relationship, Martin perpetrated sexual acts on him without his consent. He filed a civil rights complaint under 42 U.S.C. § 1983 alleging constitutional violations of the First, Fourth, and Eighth Amendments.

The district court granted summary judgment to defendants on Wood's Eighth Amendment claims finding that the romantic relationship between Wood and Martin was consensual and, therefore, Wood implicitly consented to Martin's sexual conduct. Having consented, the district court held, Wood could not state an Eighth Amendment claim. Wood appeals.

The appeal involves sexual abuse of prisoners by those supposed to protect them, the prison guards. Unfortunately, this is a serious problem in our prisons today but when prisoners seek redress for their abuse, often the state argues it has no liability because the prisoner consented to the sexual conduct.

As we explain more fully below, because of the enormous power imbalance between prisoners and prison guards, labeling a prisoner's decision to engage in sexual conduct in prison as "consent" is a dubious proposition.

## I. Background

Wood's complaint alleged that Martin began working as a corrections officer at the prison in 2001 and that Martin started working on the unit where Wood resided in 2002. Wood alleged that Martin had a "reputation for . . . being overly friendly with the inmates." Wood tried to stay away

from Martin but she pursued him. They conversed often about personal topics. Eventually, a romantic relationship developed between them. Occasionally, they would hug, kiss, and touch each other on the arms and legs, but they did not engage in sexual contact.

A few months after their relationship began, Wood started to hear rumors that Martin had gotten married. This upset Wood as his religious beliefs did not permit him to engage in adultery.

Shortly after Wood started hearing rumors that Martin was married, he asked her about it twice but she denied it each time. He decided to confront her a third time. Wood went to Martin's office and told her:

> [S]he had to be honest with me. Because I did express to her before that my feelings on adultery . . . . I was kind of crushed in a way because. . . I believed that we were working on something . . . that we had a future together.
>
> . . . .
>
> I said that we needed to back off . . . . [W]e got to stop.

He said the reason he wanted to back away was because he wanted to investigate whether she was married.

Twenty minutes later, she entered his prison cell. He described the incident as follows:

> She came in to me. I mean, she came right in to me. She told me not to worry, she wasn't married. And she put — she cupped her hand on my groin . . . enough to excite me.

Wood described his response:

> I pushed her away on that, literally pushed her away.
> . . .[I told her] "[t]his isn't the time . . . . you need
> to back off on this."

Wood said that he was very hurt, largely by the fact that
Martin was potentially lying to him about whether she was
married.

After that incident, Wood tried to end the relationship but
Martin sought him out. She subjected him to aggressive pat
searches in front of other inmates on a number of occasions.
Wood asked another correctional officer to help him but Mar-
tin did not stop pursuing him.

After Wood terminated the relationship, Martin again
entered Wood's prison cell and touched Wood in an inappro-
priate way. Wood described the incident as follows:

> [Wood:] She told me to get on the wall. . . . I was
> in my shorts, gym shorts, and she told me to get on
> the wall. This was in my house. You could plainly
> see, I had my T-shirt and my gym shorts on. And I
> said, "I don't have anything." She started from my
> sleeves coming down my shirt. She didn't touch my
> buttocks. She reached around into my shorts and
> grabbed ahold of my penis and started to stroke it.
>
> [Questioner:] How long did she do that?
>
> [Wood:] Maybe a few seconds, you know. It was —
> my mind's flaring at that time.
>
> [Questioner:] How did you end that?
>
> [Wood:] I spun around and reached for her hand.

. . . .

[Questioner:] Did you say anything to her?

. . . .

[Wood:] . . . I expressed, you know, my dislike for it. She did say that, "You know you want it." I told her I didn't.

Martin continued to harass Wood. He did not want to report Martin out of fear of retaliation.

Eventually, Wood decided he had to report the harassment. He completed an inmate concern form and gave it to Sergeant Lucile Townsend. Townsend's superior, Lieutenant Lawanda Thomason questioned Wood about the allegations. The next day, Wood was transferred to a prison in Boise.

On February 27, 2004, Wood brought suit under 42 U.S.C. § 1983 alleging the following: (1) sexual harassment by Martin in violation of the Eighth Amendment; (2) repeated body searches by Martin in violation of Wood's privacy rights under the Fourth Amendment; (3) the failure by the defendants to protect Wood from Martin in violation of the Eighth Amendment; and (4) retaliation against Wood for reporting grievances in violation of the First Amendment. On September 22, 2009, the district court issued a summary judgment order that is the subject of this appeal.

The district court granted summary judgment to the defendants on the first incident of sexual harassment (Martin entered Wood's prison cell and cupped his groin), the second incident (Martin entered Wood's cell, reached her hand into his gym shorts, and stroked his penis) and on Wood's failure to protect and retaliation claims. The district court permitted the Eighth and Fourth Amendment claims based on a series of aggressive, vindictive, and sexual pat searches Martin per-

formed on Wood to proceed to trial. At trial, a jury found that Wood's allegations that Martin performed abusive pat searches did not violate Wood's Fourth or Eighth Amendment rights. Wood does not appeal the jury's verdict, but he appeals the district court's grant of summary judgment on his Eighth Amendment sexual harassment claim and failure to protect claim, and his First Amendment retaliation claim.

## II.   Standard of Review

The panel reviews a grant or denial of summary judgment de novo. *Mark H. v. Hamamoto*, 620 F.3d 1090, 1096 (9th Cir. 2010). "Summary judgment is to be granted only if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, show that there is no genuine issue as to a material fact, and the moving party is entitled to judgment as a matter of law." *Legal Aid Servs. of Oregon v. Legal Servs. Corp.*, 608 F.3d 1084, 1093 (9th Cir. 2010).

## III.   Discussion

### (A)   Wood's Eighth Amendment Sexual Harassment Claims

#### (1)   *Legal Standards*

**[1]** The Eighth Amendment prohibits cruel and unusual punishment in penal institutions. Whether a specific act constitutes cruel and unusual punishment is measured by "the evolving standards of decency that mark the progress of a maturing society." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

**[2]** Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment. *See Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000) ("In the simplest and most absolute of terms . . . prisoners [have

a clearly established Eighth Amendment right] to be free from sexual abuse . . . .”); *see also Women Prisoners of the Dist. of Columbia Dep’t of Corr. v. District of Columbia*, 877 F. Supp. 634, 665 (D.D.C. 1994) (“[U]nsolicited touching of . . . prisoners’ [genitalia] by prison employees are ‘simply not part of the penalty that criminal offenders pay for their offenses against society’ ” (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994))), *aff’d in part and vacated in part*, 93 F.3d 910 (D.C. Cir. 1996).

In evaluating a prisoner’s claim, courts consider whether “the officials act[ed] with a sufficiently culpable state of mind” and if the alleged wrongdoing was objectively “harmful enough” to establish a constitutional violation. *Hudson*, 503 U.S. at 8.

### (2)   *Analysis*

#### (a)   The First Incident of Sexual Harassment

Shortly after Wood and Martin argued about whether Martin was married, she entered his prison cell and placed her hand on Wood’s groin. The district court relied on an Eighth Circuit case, *Ault v. Freitas*, 109 F.3d 1335, 1338 (8th Cir. 1997), for the proposition that “welcome and voluntary sexual interactions, no matter how inappropriate, cannot as a matter of law constitute ‘pain’ as contemplated by the Eighth Amendment.” The district court went on to conclude that “under the standard established in *Freitas* . . . because Mr. Wood had not ended the consensual relationship and Ms. Martin’s touching of Mr. Wood’s groin was not ‘unwelcome per se,’ ” Wood could not establish an Eighth Amendment violation.

On appeal, Wood argues that in light of the institutional setting and the power imbalance between prisoners and prison guards, prisoners are incapable of consenting to sexual con-

tact with a prison guard, and therefore, any sexual act between the two is a per se violation of the Eighth Amendment.[1]

**[3]** Whether a prisoner can consent to a relationship with a correctional officer is a matter of first impression in our circuit. Out-of-circuit courts have recognized that prisoners are incapable of consenting to sexual relationships with a prison official. *Lobozzo v. Colorado Dep't of Corr.*, 429 F. App'x 707, 711 (10th Cir. 2011) (stating, with no analysis, "[i]t is uncontested that Lobozzo, an inmate, could not legally consent to sexual activity with Martinez, a guard"); *Carrigan v. Davis*, 70 F. Supp. 2d 448 (D. Del. 1999) (concluding that "as a matter of law . . . the consent defense is unavailable" to a prison guard who engages in a sexual act with a prisoner); *Cash v. County of Erie*, No. 04-cv-0182, 2009 WL 3199558, at *2 (W.D.N.Y. Sept. 30, 2009).

The rationale underpinning these decisions rests primarily on the pronounced dichotomy of control between prison guards and prisoners. Prisoners have no control over most aspects of their daily lives. They cannot choose what or when to eat, whether to turn the lights on or off, where to go, and what to do. They depend on prison employees for basic necessities, contact with their children, health care, and protection from other inmates. *See Carrigan*, 70 F. Supp. 2d at 458-59;

---

[1]Defendants contend that Wood waived this argument by failing to raise it in the proceedings below. Defendants' argument is not persuasive. Wood's response to the defendants' motion for summary judgment in the district court proceeding states: "[I]t is questionable whether Mr. Wood, as an inmate in a state prison, even had the power to 'consent' to [Martin's] touching." Wood then points to Idaho law which criminalizes sexual contact between a prison employee and a prisoner and correctly notes that "[c]onsent is irrelevant because nowhere in the statute does it allow, nor contemplate, that 'consent' of a prisoner is a defense to charges of sexual contact by a guard." In their reply, the defendants acknowledged this argument by Wood. They state "inmate Wood claims that Idaho Code § 18-6110 renders him incapable of consenting to a relationship in prison, thereby barring what he characterizes as a 'consent' defense." They then go on to argue that consent is a valid defense and cite to *Freitas*.

*see also* Human Rights Watch Women's Rights Project, *All Too Familiar: Sexual Abuse of Women in U.S. State Prisons* 5 (1996) (hereinafter "All Too Familiar") (documenting the sexual abuse of prisoners and finding that "[i]n prison, correctional employees have nearly absolute power over the well-being of prisoners."). The power disparity between prisoners and prison guards is similar to that of an adult over a child or a teacher over a student. At least one commentator likens the relationship to that of an owner over a slave. *See* Brenda V. Smith, *Sexual Abuse of Women in United States Prisons: A Modern Corollary of Slavery*, 33 Fordham Urb. L.J. 571 (2006) (concluding that parallels exist between the prisoner-guard and owner-slave relationships). Just as power inequities between adults and minors, teachers and students, and owners and slaves foster opportunities for sexual abuse, so too does the prisoner-guard relationship. Indeed, sexual abuse in prison is prolific. *Id.* (noting that sexual harassment in prison "is so much a part of the power structure that it is almost invisible."); *Carrigan*, 70 F. Supp. 2d at 458-61; *Cash*, 2009 WL 3199558 at *2; *see also All Too Familiar*, 407 n.13 (recognizing that prisoners "cannot meaningfully consent to sexual relations with staff" and quoting the superintendent of the Bedford Hills Correctional Facility who said: "Where you have power over a person, [sex] cannot be consensual. . . . You cannot be in the position of an inmate and make that kind of decision. . . . Eventually, [sexual relations between an inmate and a staff person] makes other people feel unsafe."); *Laurie A. Hanson, Comment, Women Prisoners: Freedom from Sexual Harassment – A Constitutional Analysis*, 13 Golden Gate U. L. Rev. 667, 667 (1983) (hereinafter "Freedom From Sexual Harassment") ("Sexual relationships between inmates and guards are the product of sexual exploitation and cannot be defined as voluntary.").

**[4]** We agree with the underlying rationale of these cases. The power dynamics between prisoners and guards make it difficult to discern consent from coercion. Even if the prisoner concedes that the sexual relationship is "voluntary," because

sex is often traded for favors (more phone privileges or increased contact with children) or "luxuries" (shampoo, gum, cigarettes), it is difficult to characterize sexual relationships in prison as truly the product of free choice. *All Too Familiar*, 102, 420 (describing an environment where prisoners engage in sexual acts with staff in exchange for favorable treatment or coveted items such as gum, cigarettes, and drugs and quoting one prisoner who commented "The women here will [perform sexual acts] for gum."); *see also Freedom from Sexual Harassment,* (noting that because prisoners often barter sex for certain feelings of freedom, "even so-called 'voluntary' sexual activity must be viewed as coercive").

We are aware of the cases that have held that consensual sexual relations between a prisoner and a prison guard do not give rise to an Eighth Amendment violation. *See Ault v. Freitas,* 109 F.3d 1335, 1338 (8th Cir. 1997)*, Hall v. Beavin*, 202 F.3d 268, 1999 WL 1045694, at *1 (6th Cir. 1999) (unpublished decision) (finding no merit to plaintiff's Eighth Amendment claim where the "evidence established that [plaintiff] voluntarily engaged in a sexual relationship with [defendant]"); *Fisher v. Goord*, 981 F. Supp. 140, 174 (W.D.N.Y. 1997) (stating that consensual sexual interactions between a correction officer and an inmate do not constitute cruel and unusual punishment under the Eighth Amendment). In the leading Eighth Circuit case on this issue, *Ault v. Freitas*, a male inmate[2] and a female prison guard met in

---

[2]Many of the cases involve female prison staff that perpetrate sexual acts of violence against male inmates. According to a Bureau of Justice Statistics report, of the 344 substantiated allegations of staff-on-inmate sexual violence in federal and state prisons, 67% of the victims were male inmates and 62% of the perpetrators were female staff. Allen J. Beck & Paige M. Harrison, *Bureau of Justice Statistics, U.S. Dep't of Justice, Special Report: Sexual Violence Reported by Correctional Authorities, 2005*, at 1 (2006). At first blush, these numbers appear astounding. But given that more than 93% of the prison population in the U.S. is male, male victims are actually underrepresented and female inmates are disproportionately likely to be sexually assaulted by guards. Federal Bureau of Prisons, Quick Facts About the Bureau of Prisons, http://www.bop.gov/news/quick.jsp#1, (last visited June 11, 2012).

secluded areas of the prison where they would kiss, hug, and talk. 109 F.3d at 1336. At the guard's request, the inmate wrote her numerous "hot sexy" letters. *Id.* After a bench trial, the trial court found in favor of the guard on the inmate's sexual harassment claim. *Id.* The Eighth Circuit affirmed, concluding that there was "ample evidence supporting the trial court's finding that their relationship was consensual in the freest sense of the word." *Id.* at 1339. Because the interactions were welcome and voluntary, the court concluded the conduct did not give rise to an Eighth Amendment violation. *Id.*

**[5]** We first question whether *Freitas* is even applicable to this case. In *Freitas*, the district court conducted a bench trial on the prisoner's allegations. The trial court made a factual finding that the relationship was consensual, and the court of appeals reviewed that finding for clear error. *Freitas*, 109 F.3d at 1338. Here, the state seeks summary judgment on its position that because the relationship was consensual, so too was Martin's conduct. Unlike in *Freitas*, there has been no factual finding that the relationship was consensual, and in fact, the record reveals a clear dispute about whether Wood consented to Martin's advances—Wood's statements and conduct demonstrate objective manifestations of his unwillingness to engage in any type of sexual act. The district court erred when it decided, as a matter of law, that Wood, who had never engaged in anything but touching and kissing Martin, consented to Martin's bold sexual advances. Moreover, we find it problematic that *Freitas* utterly failed to recognize the factors which make it inherently difficult to discern consent from coercion in the prison environment.

**[6]** While we understand the reasons behind a per se rule that would make prisoners incapable of legally consenting to sexual relationships with prison officials, we are concerned about the implications of removing consent as a defense for Eighth Amendment claims. On the other hand, allowing consent as a defense may permit courts to ignore the power dynamics between a prisoner and a guard and to characterize

the relationship as consensual when coercion is clearly involved.[3] We believe the better approach is a rule that explicitly recognizes the coercive nature of sexual relations in the prison environment. Therefore, when a prisoner alleges sexual abuse by a prison guard, we believe the prisoner is entitled to a presumption that the conduct was not consensual. The state then may rebut this presumption by showing that the conduct involved no coercive factors. We need not attempt to exhaustively describe every factor which could be fairly characterized as coercive. Of course, explicit assertions or manifestations of non-consent indicate coercion, but so too may favors, privileges, or any type of exchange for sex. Unless the state carries its burden, the prisoner is deemed to have established the fact of non-consent.

[7] In this case, Wood has alleged sexual abuse by Martin and he is thus entitled to a presumption that the conduct was not consensual. The burden then shifts to the state to show that the conduct was not coercive. This the state cannot do. As noted above, Wood alleges that he and Martin were in a consensual relationship that involved hugging and kissing. Just

---

[3]Several district court cases illuminate this point. In *Edge v. Ferrell*, *McGregor v. Jarvis*, and *Stubbs v. DeRose*, the district courts concluded that the prisoner consented to the sexual relationship, notwithstanding the prisoner's receipt of privileged items. *Edge*, No. 06-0710-WS-C, 2008 WL 942038, at *1 (S.D. Ala. Apr. 7, 2008) (characterizing as "voluntary" a prisoner's decision to allow a correctional officer to perform oral sex on him in exchange for the prison warden's promise of visitation privileges for the prisoner's girlfriend (a former correctional officer herself)); *McGregor*, No. 9:08-CV-770 (GLS/RFT), 2010 WL 3724133, at *1 (N.D.N.Y. Aug. 20, 2010) (determining that a prison guard's relationship with a prisoner "appear[ed] by all accounts . . . [to be] consensual" even though the prisoner received privileges from the guard such as unfettered access to the phone, cigarettes, and marijuana); *Stubbs*, No. 3:CV-03-2362 2007 WL 776789, at *7 (M.D. Pa. March 12, 2007) (describing the prisoner's receipt of luxuries from the prison chaplain as a "substantial benefit[ ] . . . [that] 'other inmates didn't get' "). Trading sex for favors in the prison context is undoubtedly a form of coercion, but courts have failed to recognize this, instead characterizing the relationships as entirely voluntary.

before the alleged incident, Wood and Martin got into a fight and he told her to "back off" and that they had to "stop" seeing each other for a while. Wood's objective conduct demonstrates non-consent and the state cannot overcome its burden. Wood has thus established non-consent for the purposes of surviving summary judgment.

**[8]** We therefore reverse the district court's determination that Wood cannot state an Eighth Amendment claim and remand for a trial on the factual issues alleged in Wood's complaint.

### (b)   *The Second Incident of Sexual Harassment*

Wood alleges that after he terminated their relationship, Martin entered his prison cell, reached her hand into his gym shorts, and stroked his penis. The district court granted summary judgment to the state on the second alleged incident of sexual abuse, concluding that both the subjective and objective elements necessary for an Eighth Amendment violation were lacking.

### (i)   *The Subjective Prong*

The district court found "no evidence to support the conclusion that Ms. Martin acted maliciously and with the intent to inflict harm." Instead, wrote the district court, Martin perpetrated the act in an "attempt to persuade [Wood] to resume the relationship."

The "malicious and sadistic" standard arose out of "the need to maintain or restore discipline" inside the prison. *Hudson*, 503 U.S. at 6 (internal quotation omitted). When a prison disturbance occurs, prison officials must make "decisions 'in haste, under pressure, and frequently without the luxury of a second chance.' " *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). In these situations, prison officials are "accorded wide-ranging deference" and therefore, prisoners

alleging excessive force must show that the force was applied "maliciously and sadistically to cause harm." *Id.*

**[9]** But sexual contact between a prisoner and a prison guard serves no legitimate role and "is simply not 'part of the penalty that criminal offenders pay for their offenses against society.' " *Farmer*, 511 U.S. at 834. Where there is no legitimate penological purpose for a prison official's conduct, courts have "presum[ed] malicious and sadistic intent." *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1290 (10th Cir. 1999); *see also Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997).

**[10]** Here, Martin was not attempting to discipline Wood or quell a prison riot, but instead acted for her own gratification. Martin's coercive sexual actions served no valid objective and we agree with the Tenth Circuit that in such cases, the conduct itself constitutes sufficient evidence that force was used "maliciously and sadistically for the very purpose of causing harm." *Giron*, 191 F.3d at 1290 (quoting *Whitley*, 475 U.S. at 320)).

(ii) *The Objective Prong*

**[11]** The district court found that Wood suffered no "specific psychological or physical harm" as a result of the incident. However, there is no requirement that the plaintiff produce evidence of injury; "[r]ather, the only requirement is that the officer's actions be 'offensive to human dignity.' " *Schwenk*, 204 F.3d at 1196.

**[12]** Numerous courts have held that sexual harassment by a prison guard can constitute an Eighth Amendment violation. In *Berry v. Oswalt*, a female prisoner alleged that a male guard "had attempted to perform nonroutine patdowns on her, had propositioned her for sex, had intruded upon her while she was not fully dressed, and had subjected her to sexual comments." 143 F.3d 1127, 1131 (8th Cir. 1998). A jury

found for the prisoner and the guard challenged the verdict on appeal arguing that the prisoner could not establish the objective element necessary for an Eighth Amendment violation. *Id.* The Eighth Circuit upheld the verdict stating that it was "within the jury's discretion to find that [the guard's] alleged harassing behavior was 'harmful enough,' to be a violation of the Eighth Amendment." *Id.* at 1133.

In *Watson v. Jones*, two male inmates alleged that a female correctional officer routinely "fondled them during pat-down searches" in a two-month period. 980 F.2d 1165, 1165 (8th Cir. 1992). The Eighth Circuit reversed the district court's grant of summary judgment to the correctional officer and concluded that the allegations could state a constitutional claim. *Id.*

In *Calhoun v. DeTella*, prison guards "purposefully demeaned and sexually harassed [the plaintiff-prisoner] while strip searching him in front of female officers." 319 F.3d 936, 939 (7th Cir. 2003). The district court dismissed the complaint for failure to state a claim but the Eighth Circuit reversed concluding that the strip search was conducted "in a manner designed to demean and humiliate" the inmate and, thus, sufficiently stated an Eighth Amendment claim. *Id.* at 940.

**[13]** These decisions and others comport with the view that, at its core, the Eighth Amendment protects "the basic concept of human dignity" and forbids conduct that is "so totally without penological justification that it results in the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 182-83 (1976). We have previously held that a sexual assault on a prisoner by a prison guard is always "deeply 'offensive to human dignity' " and is completely void of penological justification. *Schwenk*, 204 F.3d at 1196. We thus conclude that Wood's allegations are sufficient to state an Eighth Amendment claim and we reverse the district court's grant of summary judgment on this claim.

## (B)   Wood's Other Claims

**[14]** Wood argues that prison officials acted with deliberate indifference to his safety in violation of the Eighth Amendment because they failed to protect him from Martin. Deliberate indifference requires a showing that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The evidence reveals that the prison officials counseled Martin on the proper boundaries she should maintain with inmates, but there is no evidence that the supervisory defendants were on notice that Martin presented a substantial risk to Wood. Wood admitted that he never disclosed Martin's actions to prison officials until long after the incidents at issue in this case occurred. We therefore affirm the district court's grant of summary judgment to the defendants on Wood's deliberate indifference claim.

**[15]** Wood next argues that prison officials retaliated against him for filing a grievance in violation of his First Amendment rights. To establish a claim for retaliation, a prisoner must show that a prison official took some adverse action against an inmate because of that prisoner's protected conduct, that the action chilled the inmate's exercise of his constitutional rights, and the action did not advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also Rizzo v. Dawson*, 778 F.2d 527, 531-32 (9th Cir. 1985) (recognizing a First Amendment right of prisoners to be free from prison transfers or reassignments made in retaliation for filing grievances). We agree with the district court that Wood's "allegation that Defendants failed to protect him from Defendant Martin is at odds with [his] objection to being transferred to a different facility so that Defendant Martin would not be able to have further contact with him." We also agree with the district court that the "transfer reasonably advanced a legitimate correctional

goal—to distance Plaintiff from two female officers who were fraternizing with him contrary to IDOC policy." Thus, we affirm the district court's decision to grant summary judgment to the defendants on Wood's retaliation claim.

## IV.   Conclusion

We reverse the district court's grant of summary judgment on Wood's Eighth Amendment sexual harassment claims. We affirm the district court's decision to grant summary judgment on Wood's deliberate indifference and retaliation claims. Wood shall recover the costs of his appeal.

REVERSED in part, AFFIRMED in part and REMANDED for trial.