RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0265p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

DUSTAN HALE,

*Plaintiff-Appellant*,

*v.*

BOYLE COUNTY, KENTUCKY; DEREK ROBBINS;
THOMAS PENNINGTON,

*Defendants-Appellees*.

⎤
⎟
⎟
⎟
⎬  No. 20-6195
⎟
⎟
⎟
⎦

───────────────

Appeal from the United States District Court for the Western District of Kentucky at Louisville.
No. 3:18-cv-00002—Gregory N. Stivers, District Judge.

Argued:  June 10, 2021

Decided and Filed:  November 18, 2021

Before:  BOGGS, MOORE, and LARSEN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Aaron Bentley, BELZLEY, BATHURST & BENTLEY, Prospect, Kentucky, for Appellant.  Lynn Sowards Zellen, KINKEAD & STILZ, PLLC, Lexington, Kentucky, for Appellees Boyle County and Derek Robbins.  Kyle M. Vaughn, VAUGHN PETITT LEGAL GROUP, PLLC, Pewee Valley, Kentucky, for Appellee Thomas Pennington.  **ON BRIEF:** Aaron Bentley, BELZLEY, BATHURST & BENTLEY, Prospect, Kentucky, Samuel Weiss, RIGHTS BEHIND BARS, Washington, D.C., for Appellant.  Lynn Sowards Zellen, D. Barry Stilz, KINKEAD & STILZ, PLLC, Lexington, Kentucky, for Appellees Boyle County and Derek Robbins.  Kyle M. Vaughn, Carol Schureck Petitt, VAUGHN PETITT LEGAL GROUP, PLLC, Pewee Valley, Kentucky, for Appellee Thomas Pennington.

—————————————

**OPINION**

—————————————

PER CURIAM.  Dustan Hale was detained at the Marion County Detention Center in Kentucky ahead of her trial in neighboring Boyle County.  Court Security Officer Thomas Pennington transported her to and from her monthly court hearings in Boyle County.  Hale and Pennington repeatedly performed oral sex on each other and had unprotected penetrative vaginal sex in Pennington's van.  Before and during the encounters, Pennington showered Hale with perks—she rode cuffless in his van's front seat, he bought her sodas, and he allowed her to smoke.  He also offered to intervene in Hale's pending criminal case.  Hale gave birth to their child.  Invoking the Fourteenth Amendment, Hale filed a 42 U.S.C. § 1983 suit against Pennington, Boyle County, and the county's sheriff Derek Robbins.  The district court found that Hale's consenting to sexual contact and intercourse with Pennington negated her constitutional claims, and therefore the district court granted summary judgment to Defendants.

Hale, however, has presented a genuine dispute of material fact about whether the encounters with Pennington were consensual.  We thus **REVERSE** the judgment in part, **VACATE** in part, and **REMAND** for further proceedings.

**I. BACKGROUND**

Dustan Hale was charged with failing a drug test while on pretrial diversion in Boyle County, Kentucky and was detained at the Marion County Detention Center ahead of her trial. R. 55-12 (Release Rep. at 1) (Page ID #389).  The Boyle County Sheriff's Office transported Hale between the counties for her monthly court appearances.  R. 59 (Hale Resp. to Pennington SJ Mot. at 3) (Page ID #452).  In December 2016, Boyle County Deputy Sheriff Jim Gies drove Hale to and from court. R. 59-3 (Hale Dep. at 101) (Page ID #574).  Gies treated Hale "as an inmate." *Id.* at 102 (Page ID #575); R. 59-7 (Hale Aff. at 1) (Page ID #759).  Gies took no detours, Hale sat handcuffed in the backseat, the two did not converse about personal matters, Gies did not inquire about her criminal charges, and Gies did not buy Hale anything.  R. 59-3 (Hale Dep. at 101–02) (Page ID #574–75); R. 59-7 (Hale Aff. at 1) (Page ID #759).

Boyle County Court Security Officer (CSO) Thomas Pennington transported Hale at least six times between January and April 2017.[1]  When Pennington first drove Hale from Marion County to Boyle County, Hale sat handcuffed in the back.  R. 59-3 (Hale Dep. at 86, 92) (Page ID #559, 565).  On the way back to Marion County, Pennington pointed out that Hale had four felony warrants and asked how she "got [her]self into so much trouble."  *Id.* at 94 (Page ID #567).  Hale clarified that her marriage had fallen apart, she had been using cocaine, and she failed a drug test with three months left on her pretrial diversion program.  *Id.*  Pennington commented that his marriage was likewise in trouble, and the two spoke for hours.  *Id.*  Hale did not "get to see daylight very much" in prison and "[i]t was a sunny day," so she asked Pennington to take the long way back to Marion County.  *Id.* at 95 (Page ID #568).  Pennington obliged.  *Id.*  Instead of driving straight back to Marion County, he detoured to Taylor County to pick up another detained person.  *Id.*

On the way to Taylor County, Pennington stopped at a gas station to buy soft drinks for himself and Hale.  *Id.* at 92 (Page ID #565).  He jumped back in the car, drove to the side of the parking lot, and asked Hale if she would do "anything stupid" if he put her in the front seat.  *Id.* at 92–93 (Page ID #565–66).  No, she said.  *Id.* at 93 (Page ID #566).  Pennington placed Hale in the front seat, uncuffed her, and said "you're in control now."  *Id.* at 96 (Page ID #569).  In Hale's words:

> I wasn't quite sure what that meant, but beings [sic] that he was a man and I was a girl, I kind of insinuated maybe he was insinuating something sexual. . . . [B]ecause I was unsure of what he meant by you're in control now . . . I looked at him and said, I'll suck your dick if you're cool with it. . . . I don't know, kind of feel him out, see what that comment meant.

*Id.* at 96–97 (Page ID #569–70).  Pennington smiled, saying nothing.  *Id.* at 97 (Page ID #570).  Hale told him to find a back road.  *Id.*  Pennington rolled up to a field.  *Id.*  The two kissed and Hale performed oral sex on him.  *Id.* at 97–98 (Page ID #570–71).  Pennington instructed Hale not to tell anyone.  *Id.* at 102 (Page ID #575).  Hale rode cuffless in the front seat until they arrived at Taylor County to pick up the other passenger.  *Id.* at 100 (Page ID #573).  Pennington

---

[1]Hale said six in her deposition and seven in her amended complaint.  *Compare* R. 59-3 (Hale Dep. at 121) (Page ID #594), *with* R. 39 (Am. Compl. at 4) (Page ID #208).

allowed Hale and the other detained person to smoke cigarettes in the van. *Id.* at 103 (Page ID #576).

A month later, Pennington once again picked up Hale from her detention center. *Id.* at 104 (Page ID #577). He immediately uncuffed her and asked if she "was ready to go for a ride." *Id.* Yes, Hale affirmed. *Id.* Instead of driving straight to Boyle County, Pennington veered to Pulaski County. *Id.* He imparted that he would talk to the prosecutors in Hale's case to help her avoid ten years in prison. R. 59-7 (Hale Aff. at 2) (Page ID #760). Halting at another gas station, Pennington left Hale uncuffed in the front seat. R. 59-3 (Hale Dep. at 105) (Page ID #578). He purchased Hale a soft drink and let her smoke. *Id.* at 106 (Page ID #579). Hale held Pennington's hand and kissed his neck. *Id.* They "mutual[ly]" decided to pull into a field. *Id.* Hale and Pennington had unprotected vaginal intercourse in the driver's seat. *Id.* at 107–11 (Page ID #580–84). Pennington ejaculated inside Hale. *Id.* at 111 (Page ID #584). Hale knew that she could be impregnated from unprotected sex and had not asked Pennington to use a condom, but she "wasn't aware" that Pennington was going to ejaculate inside of her. *Id.* at 111–13 (Page ID #584–86). Pennington later pulled down the visor in his car, and a condom fell out onto his lap. *Id.* at 112 (Page ID #585). Hale told another detained person at Marion County that she and Pennington had sex; their conversation was overheard by a third detained person who was feigning sleep. *Id.* at 116–18 (Page ID #589–91).

When Pennington picked Hale up the third time, he "wasn't very friendly" and was "pissed off." *Id.* at 118 (Page ID #591). He left Hale handcuffed in the back of the van and said nothing. *Id.* Speeding along a back road, he confronted Hale: "Why in the hell did [you] tell[?]" *Id.* Hale, still handcuffed, was scared. *Id.* at 119 (Page ID #592). She explained that someone must have overheard her conversation with her friend. *Id.* Pennington asked Hale to take a pregnancy test, which he had in the glove box, and she assented. *Id.* at 120 (Page ID #593). The test came back negative. *Id.* Afterwards, Pennington and Hale kissed, performed oral sex on each other, and had unprotected vaginal intercourse in the driver's seat. *Id.* at 120–22 (Page ID #593–95). Hale promised that she would not tell anyone else about their encounters and would deny everything if asked. *Id.* at 120 (Page ID #593). Pennington drove Hale to court

at least three more times in March and April.  *Id.* at 121–23 (Page ID #594–96).  On each trip, they had unprotected vaginal intercourse.  *Id.*

At the time, Hale thought that her relationship with Pennington was "more than sex," even though she knew that Pennington was married.  *Id.* at 115 (Page ID #588).  Pennington "expressed concern for [Hale] and interest in [her] . . . so [she] was very comfortable with him and [] trusted him."  *Id.*  To Hale, Pennington was her boyfriend.  *Id.*  And she wanted Pennington to transport her because he let her have more freedom than other officers did.  *Id.* at 104–05 (Page ID #577–78).  Pennington never forced her to do anything, she relished his company, and she enjoyed their sexual contact.  *Id.* at 115 (Page ID #588).  Pennington also gave Hale his phone number, which allowed her to call him several times.  *Id.* at 123–24 (Page ID #596–97).

Based on a confidential informant's tip, Boyle County Sheriff Derek Robbins learned on April 5, 2017 that Hale and Pennington might be having sex.  R. 55-18 (4/5/17 Mem.) (Page ID #432); R. 59-5 (Robbins Dep. at 66) (Page ID #680).  Robbins reviewed security camera footage and the "body receipt" that Pennington had filed for his trip on April 3, 2017.  R. 59-5 (Robbins Dep. at 76–80) (Page ID #682–83).  The sheriff discovered that Pennington picked up Hale at 2:45 AM on April 3 and arrived at the Casey County Detention Center to get another detainee at 4:13 AM.  *Id.* at 76–78 (Page ID #682–83).  Robbins determined that the drive should have taken half that time.  *Id.* at 78 (Page ID #683).  The sheriff summoned Pennington to be interviewed, suspended Pennington without pay, and alerted the police.  R.  55-19 (4/6/17 Not.) (Page ID #433); R. 55-20 (4/7/17 Letter) (Page ID #434); R. 59-5 (Robbins Dep. at 87–88) (Page ID #685).  Pennington resigned.  R. 55-21 (4/12/17 Resignation) (Page ID #435).

In November 2017, Hale gave birth to Pennington's daughter.  R. 59-1 (Discharge Rep. at 1) (Page ID #472); R. 59-4 (DNA Test at 1) (Page ID #661).  Pennington pleaded guilty to one count of bribery of a public servant (in violation of Kentucky Revised Statute § 521.020) and one count of sexual misconduct (in violation of Kentucky Revised Statute § 510.140).  R. 88-1 (Plea Agmt. at 1–3) (Page ID #1102–04).

Hale sued Boyle County, Pennington, and Robbins. R. 1 (Compl. at 1) (Page ID #1); R. 39 (Am. Compl. at 1) (Page ID #205); R. 65 (8/27/19 Order) (Page ID #938).**2** She raised three 42 U.S.C. § 1983 claims under the Fourteenth Amendment, invoking excessive-force, malicious-and-sadistic, deliberate-indifference, and shocks-the-conscience standards. R. 39 (Am. Compl. at 6–8) (Page ID #210–12). She also alleged that Pennington violated the Kentucky Penal Code, *id.* at 11–12 (Page ID #11–12), which criminalizes any sexual contact between prison guards and persons behind bars and states that those in custody are deemed legally incapable of consenting to sexual acts, KY. REV. STAT. ANN. §§ 510.020(3)(f); 510.060(1)(e); 510.090(1)(e); 510.120(1)(b). She raised a failure-to-protect claim against Robbins.**3** R. 39 (Am. Compl. at 8–9) (Page ID #212–13). She asserted a municipal-liability claim against Boyle County. *Id.* at 9–10 (Page ID #213–14). And she accused all Defendants of negligence and intentional infliction of emotional distress in violation of Kentucky law. *Id.* at 10–11 (Page ID #214–15). Defendants moved for summary judgment; Hale responded, and Boyle County and Robbins replied. R. 53 (Pennington SJ Mot. at 1) (Page ID #262); R. 55 (Robbins & Boyle Cnty. SJ Mot. at 1) (Page ID #327); R. 59 (Hale Resp. to Pennington SJ Mot. at 1) (Page ID #450); R. 61 (Hale Resp. to Robbins & Boyle Cnty. SJ Mot. at 1) (Page ID #801); R. 67 (Robbins & Boyle Cnty. SJ Mot. Reply at 1) (Page ID #942).

The district court found that Hale's Fourteenth Amendment claims against Pennington failed, reasoning that she had voluntarily had sex with Pennington. *See Hale v. Boyle County*, No. 3:18-CV-00002GNS-RSE, 2020 WL 5646903, at \*12 (W.D. Ky. Sept. 22, 2020). Explaining that Hale's failure-to-protect and municipal-liability claims require an underlying constitutional violation, the district court dismissed Hale's remaining federal-law claims. *Id.* at

---

**2**Hale initially sued Marion County, Boyle County, Pennington, Robbins, and Marion County Jailer Barry Brady. R. 1 (Compl. at 1) (Page ID #1). The district court dismissed Marion County and Brady from the case pursuant to a joint motion. R. 65 (8/27/19 Order) (Page ID #938).

**3**Hale's complaint raises a "supervisory liability" claim against Robbins. R. 39 (Am. Compl. at 8–9) (Page ID #212–13). The parties agree that this is a failure-to-protect claim. *See* Hale Br. at 45; Boyle Cnty. Br. at 28–29. We and the parties understand that Hale sued Robbins in his personal—not his official—capacity. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[O]fficials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law."); Hale Br. at 45–54 (discussing claims against Robbins); Boyle Cnty. Br. at 15–41 (arguing that Robbins is entitled to qualified immunity); Hale Reply Br. at 12–15 (discussing claims against Robbins).

*15.  Because no federal claims remained, the district court dismissed Hale's state-law claims because those were now more appropriately pursued in the Kentucky courts.  *Id.* at *17.  Hale appealed.

## II.  ANALYSIS

### A.  Jurisdiction

A grant of summary judgment is a final order that we may review under 28 U.S.C. § 1291.  *Bukowski v. City of Akron*, 326 F.3d 702, 707 (6th Cir. 2003).

### B.  Standard of Review

We review de novo a grant of summary judgment.  *Jones v. Clark County*, 959 F.3d 748, 756 (6th Cir. 2020).  To be entitled to summary judgment, a party must show that there is no genuine dispute of any material fact and that the party is entitled to judgment as a matter of law. *Id.*

### C.  Excessive Force

Persons in the criminal justice system invoke different constitutional amendments in their 42 U.S.C. § 1983 suits depending on their status.  Arrested persons bring § 1983 claims under the Fourth Amendment's protection from unreasonable search and seizure.  *See Graham v. Connor*, 490 U.S. 386, 388 (1989).  Detained persons, like Hale, do so under the Fourteenth Amendment's Due Process Clause.  *See Kingsley v. Hendrickson*, 576 U.S. 389, 391 (2015). And convicted persons do so under the Eighth Amendment's protection from cruel and unusual punishment.  *See Whitley v. Albers*, 475 U.S. 312, 318 (1986).  When reviewing arrested persons' Fourth Amendment claims, courts employ a wholly objective standard.  *See Graham*, 490 U.S. at 394.  But courts invoke a test with objective and subjective components when assessing convicted persons' Eighth Amendment claims.  *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Courts historically applied the Eighth Amendment frameworks to detained persons' Fourteenth Amendment claims of every variety.  *See Richmond v. Huq*, 885 F.3d 928, 937–38 (6th Cir. 2018).  But the Supreme Court disrupted that tradition in *Kingsley*.  In that case, the

Court clarified that excessive-force claims brought by detained persons must be analyzed under the objective Fourth Amendment standard, not the Eighth Amendment's malicious-and-sadistic standard. *See Kingsley*, 576 U.S. at 396–97. *Kingsley* set forth a two-prong inquiry for Fourteenth Amendment excessive-force claims. First, an official must purposefully, knowingly, or ("possibly") recklessly engage in the alleged physical contact with the detained person. *Id.* at 396. Mere negligence or accident will not suffice. *See id.* Second, the official's use of force must be objectively unreasonable. *See id.* at 396–97. This totality-of-the-circumstances analysis hinges on the "perspective of a reasonable officer on the scene" and must account for the government's interests in prison management among other nonexhaustive considerations. *See id.*[4] Relevant here, a detained person "can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id.* at 398.

*Kingsley*'s objective test applies to Hale's claims against Pennington. Both parties have framed Hale's claim as an excessive-force claim. *See* Appellant Br. at 21; Pennington Br. at 8–11. That framing comports with how other courts have treated similar claims. *See Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020); *Bearchild v. Cobban*, 947 F.3d 1130, 1140 (9th Cir. 2020). And that framing is also consistent with the facts of this case. The Tenth Circuit appears to be the only federal appellate court that has encountered a detained person's allegation that they were sexually abused by a prison guard post-*Kingsley*. In *Brown*, the court applied *Kingsley* to a detained woman's lawsuit against a guard who allegedly abused her, reasoning that an analysis of Fourteenth Amendment claims cannot track the Eighth Amendment after *Kingsley*. *See* 974 F.3d at 1182–83. Consistent with the Tenth Circuit, we conclude that Hale's assertions against Pennington are properly viewed as an excessive-force claim that should be evaluated under *Kingsley*'s objective test.

---

[4]*Kingsley* lists nonexclusive considerations that "bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397.

The parties agree that Hale's excessive-force claim hinges on consent. In *Rafferty v. Trumbull County*, we held that "sexual abuse of inmates" is generally "sufficiently serious" to implicate the objective component of an Eighth Amendment claim. 915 F.3d 1087, 1095–96 (6th Cir. 2019). And the fact that the prison guard there never used physical force against the incarcerated person did not matter. *Id.* at 1091–92, 1096. It also did not matter that the incarcerated person was "never explicitly threatened." *Id.* at 1091. If Hale is able to show that the encounters were nonconsensual, such conduct would also violate the Fourteenth Amendment under *Kingsley*. *See id.* at 1095–96. Consent is thus the focus.

In *Rafferty*, we addressed an imprisoned person's allegation that a prison guard sexually abused her. "[The prison guard] . . . argue[d] that he did not violate the Eighth Amendment because [the imprisoned woman] consented to his sexual advances." *Rafferty*, 915 F.3d at 1096. We rejected that argument at the summary-judgment stage. The panel explained, "First, as [the guard] acknowledges, 'inmates are generally regarded as unable to consent to sexual relations with prison staff.'" *Rafferty*, 915 F.3d at 1096 (quoting guard's brief). We supplied a "*see, e.g.*," citation to a Ninth Circuit case, *Wood v. Beauclair*, 692 F.3d 1041, 1047–49 (9th Cir. 2012), which we described as "explaining that '[t]he power dynamics between prisoners and guards make it difficult to discern consent from coercion,' acknowledging 'the coercive nature of sexual relations in the prison environment,' and holding that 'when a prisoner alleges sexual abuse by a prison guard . . . the prisoner is entitled to a [rebuttable] presumption that the conduct was not consensual.'" *Rafferty*, 915 F.3d at 1096 (alterations in original). "Second," we continued, "there is a disputed issue of material fact about whether [the incarcerated person] consented. [The incarcerated person] states that she only complied because [the guard] 'intimidated' her." *Id.* (citation omitted). "At this stage," we wrapped up, "the Court cannot conclude that [the incarcerated person] consented." *Id.* Through its citation to *Wood*, it appears that *Rafferty* adopted a rebuttable presumption that sexual conduct between prison officials and persons behind bars was nonconsensual. *See Wood*, 692 F.3d at 1047–49.[5]

---

[5]In arguing that she did not consent to sexual contact with Pennington, Hale analyzes her claim under the rebuttable-presumption framework. Hale Br. at 29–37. But she also argues that because all sex between guards and persons behind bars is illegal under Kentucky law, Hale never could have consented to the sexual contact with Pennington and that therefore Pennington's consent defense fails as a matter of law. *See id.* at 23–29.

We clarify that a rebuttable-presumption framework regarding consent applies in cases involving sexual conduct between prison officials and incarcerated persons. Under this framework, an incarcerated person is "entitled to a presumption that the conduct was not consensual." *Wood*, 692 F.3d at 1049. The defendant "may rebut this presumption by showing that the conduct involved no coercive factors." *Id.* Coercive factors include, but are not limited to, "explicit assertions or manifestations of non-consent," as well as "favors, privileges, or any type of exchange for sex." *Id.* Because there is a presumption of non-consent, the defendant must affirmatively show that the incarcerated person consented.

As in *Rafferty*, we conclude that a genuine issue of material fact remains as to whether Hale consented to the encounters with Pennington. Hale has attested that when Pennington discovered that she had told others about their sexual encounters and confronted her, he scared her. That is akin to the subjective "intimidation" that the incarcerated person felt in *Rafferty* and is evidence that the encounters were not consensual.

---

Hale's argument relating to a per-se nonconsent rule based on state law fails. Generally speaking, "the violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983," *Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010). Indeed, Hale's counsel conceded at oral argument that Kentucky's statute alone does not dictate the constitutional contours of her § 1983 claim.

Relatedly, Hale argues that Pennington is estopped from denying that he had nonconsensual sex with Hale because Pennington pleaded guilty to sexual misconduct and bribery of a public servant. *See* Hale Br. at 38–39. This argument also fails. For estoppel to apply, the issue must be "necessary," and the party must have been "given a full and fair opportunity to litigate" it in state court. *See Moore v. Commonwealth of Kentucky*, 954 S.W.2d 317, 319 (Ky. 1997). For his guilty plea to sexual misconduct, Pennington had to admit that Hale did not consent to the encounters. *See* KY. REV. STAT. ANN. § 510.140. But he had no ability to contest that element of the crime because Kentucky law makes any sexual contact between prison guards and prisoners *per se* nonconsensual. *See id.* § 510.020(3)(f). Because Pennington had no reason to litigate whether, absent Kentucky law, Hale had consented to the encounters, Pennington is now not estopped from challenging that fact question in this case. What about the bribery conviction? Bribery of a public servant occurs when, "[w]hile a public servant, [a person] solicits, accepts, or agrees to accept any pecuniary benefit upon an agreement or understanding that his vote, opinion, judgment, exercise of discretion, or other action as a public servant will thereby be influenced." *Id.* § 521.020. By pleading guilty to violating this statute, Pennington admitted that having sex with Hale influenced *his* decision to violate jail policies and rules. That, however, does not make Hale's Fourteenth Amendment claim. She must show that Pennington's actions—including the benefits he bestowed upon her—coerced *her* into having sex with him. As a result, Pennington is not estopped from challenging consent.

Most significantly, Hale asserted in an affidavit that Pennington offered to speak to the prosecutors in Hale's case after Hale had performed oral sex on him.**6** This proffer was a double-edged sword. By proposing to help Hale, Pennington also implied that he could harm her case. Hale was facing a decade in prison; she had a lot to lose. No doubt, Pennington's telling Hale that he could assist her case was the most egregious example of coercion here.

Hale also asserted that Pennington exchanged privileges and favors in exchange for sex. Pennington provided Hale with sunshine, detours, cigarettes, sodas, and his mobile number. Each of these gifts, favors, and privileges is indicative of coercion. *See Wood*, 692 F.3d at 1047 ("Even if the prisoner concedes that the sexual relationship is 'voluntary,' because sex is often traded for favors (more phone privileges or increased contact with children) or 'luxuries' (shampoo, gum, cigarettes), it is difficult to characterize sexual relationships in prison as truly the product of free choice."); *see also Chao v. Ballista*, 772 F. Supp. 2d 337, 350–51 (D. Mass. 2011) (citing perks such as cigarettes, candy, and food as evidence in rejecting the consent defense as a matter of law).

Defendants maintain that Hale voluntarily had sexual contact and intercourse with Pennington. *See* Pennington Br. at 1; Boyle Cnty. Br. at 2. Defendants argue in their briefs and asserted at oral argument that Pennington never intimidated or threatened Hale; that Pennington never forced her to have sex; and Hale enjoyed having sex with Pennington. *See* Pennington Br. at 14, 23; Boyle Cnty. Br. at 20–21; Oral Arg. at 14:20–28. In one sense, Defendants are correct. Per Hale's testimony, all sexual contact was the product of Hale's agreeing to have sex with Pennington. But as the Ninth Circuit recognized, coercion can make a purportedly "voluntary"

---

**6**After Hale was deposed, she supplied an affidavit. R. 59-7 (Hale Aff. at 1) (Page ID #759). Hale also moved to disclose the forensic expert who signed the Kentucky State Police Forensic Laboratories report that indicates that Pennington is the father of her child. R. 56 (7/30/19 Mot. at 1) (Page ID #437). The deposition and the affidavit are included in the summary-judgment record. Defendants have moved to strike the affidavit and bar the expert disclosure. R. 63 (8/27/19 Mot. at 1) (Page ID #885); R. 66 (9/3/19 Mot. at 1) (Page ID #939). Because the district court granted summary judgment to Defendants without needing to look at the affidavit, it found that this issue was moot. *See Hale v. Boyle County*, No. 3:18-CV-00002-GNS-RSE, 2020 WL 5646903, at *15 (W.D. Ky. Sept. 22, 2020). Defendants ask us not to consider the affidavit, arguing that that it conflicts with Hale's deposition testimony. R. 63 (8/27/19 Mot. at 1) (Page ID #885); R. 66 (9/3/19 Mot. at 1) (Page ID #939). Nothing in Hale's deposition testimony, however, contradicts the assertion in her affidavit that Pennington offered to intervene in her criminal case. We therefore consider it as part of the evidence. *See Briggs v. Potter*, 463 F.3d 507, 513 (6th Cir. 2006).

act involuntary. *See Wood*, 692 F.3d at 1047. Defendants minimize the coercive aspects of Pennington's gifts, privileges, and offer to intervene in Hale's criminal case. Despite Hale's testimony, the gifts, privileges, and statements by and from Pennington are sufficient evidence of coercion to create a genuine issue of material fact.[7]

## D. Failure to Protect & Municipal Liability

Because the district court found that Hale had consented to sex with Pennington, the district court dismissed Hale's failure-to-protect claim against Robbins and municipal-liability claim against Boyle County. *Hale*, 2020 WL 5646903, at *15. In light of our conclusion that there is a genuine dispute of material fact about whether Pennington used excessive force against Hale, we vacate the district court's judgment in favor of Robbins and Boyle County and remand for further consideration consistent with this opinion.

## E. Supplemental Jurisdiction

Finding that Hale had failed to create a genuine dispute of material fact about her federal-law claims, the district court declined to exercise supplemental jurisdiction over Hale's state-law negligence and intentional-infliction-of-emotional-distress claims. *See Hale*, 2020 WL 5646903, at *15. Because we conclude that there is a genuine dispute of material fact about Hale's federal-law claims, we remand so that the district court can reconsider its supplemental-jurisdiction decision.

## III. CONCLUSION

We conclude that the district court should not have granted summary judgment to Pennington on Hale's excessive-force claim. We **REVERSE** in part, **VACATE** in part, and **REMAND** for further proceedings consistent with this opinion.

---

[7]In cases in which an officer asserts a qualified-immunity defense, if we concluded that a state officer potentially has violated a person's constitutional rights in violation of § 1983, we would ask whether that that right was clearly established. *See Saucier v. Katz*, 533 U.S. 194, 202 (2001). However, Pennington does not argue qualified immunity.